WILLIAM BAIRD & others[1] vs. ATTORNEY GENERAL & others.[2]

Suffolk.    November 2, 1976. — January 25, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, & WILKINS, JJ.

*Parent and Child. Constitutional Law,* Abortion. *Abortion. Physician. Minor,* Abortion, Consent to medical services.

Under G. L. c. 112, § 12P, in deciding whether to grant consent to an abortion for an unmarried minor a parent may consider only the best interests of the minor. [746-747]

Under G. L. c. 112, § 12P, in deciding whether to permit an abortion for an unmarried minor for good cause shown despite parental objections, a judge of the Superior Court may consider only the best interests of the minor [747-748]; a judge in making such a decision may refuse consent even though he finds that the minor is capable of making, and has made, an informed and reasonable decision to have an abortion [748].

Under G. L. c. 112, § 12P, parental consultation is a prerequisite to a court order granting permission for an abortion to an unmarried minor where there is no emergency and where at least one parent, or a person with equivalent responsibilities, is available. [749-752]

Discussion of the common law right of a mature minor to obtain medical treatment without parental consent. [752-755]

Inasmuch as G. L. c. 112, § 12P, requires parental consultation, notification to a minor's parents is required before a judge may act on a request for an abortion or, if the parents are unavailable, subsequent notification is required. [755-756]

Statement concerning expeditious implementation of proceedings under G. L. c. 112, § 12P, upon an application for judicial approval of a nonemergency abortion for an unmarried minor. [756-758]

---

[1] The plaintiffs are William Baird; Mary Moe, a pseudonymous unmarried minor residing in Massachusetts with her parents, who was pregnant at the time of the initiation of the action; Parents Aid Society, Inc., a Massachusetts nonprofit corporation which, through its medical director and supporting personnel, provides abortions; and Dr. Gerald Zupnick, who is medical director of the corporation and performs abortions on a fee basis at the corporation's place of business two days a week.

[2] The defendants are the Attorney General of the Commonwealth and the several district attorneys in the Commonwealth. References to the defendants in this opinion do not include the intervening defendant (intervener) referred to subsequently.

Baird *v.* Attorney General.

The standard to be applied in determining whether a medical procedure should be performed on a minor pursuant to G. L. c. 112, § 12F, is the same as the standard for consenting to an abortion for a minor under § 12P. [758-762]

If a judge of the Superior Court in a proceeding under G. L. c. 112, § 12P, determines that the best interests of an indigent minor would be served by the appointment of counsel to represent the minor, he has the power to make such appointment. [762-764]

A physician who believes, reasonably and in good faith, that a minor is eighteen or more years old or has been married, divorced or widowed, although it is not a fact, is exempted from criminal liability under the provisions of G. L. c. 112, § 12P, for performing an abortion on the minor. [764]

If necessary to preserve the constitutionality of G. L. c. 112, §§ 12F and 12P, this court would construe § 12F not as an implied repeal of the parental and judicial consent provisions of § 12P but as a restriction on the authorization for consent in § 12F with respect to pregnancy-related operations [766]; if the distinction between pregnancy-related operations and other operations violates the equal protection clause, the consent provisions of § 12P must fail as far as is necessary to eliminate the constitutional defect [766].

CERTIFICATION of questions of law to the Supreme Judicial Court by the United States District Court for the District of Massachusetts.

*Roy Lucas* of Washington, D.C. (*Joan C. Schmidt* with him) for the plaintiffs.

*Charles P. Kindregan* (*Mary Laura Russell* with him) for the defendant-intervener.

*S. Stephen Rosenfeld,* Assistant Attorney General (*Garrick F. Cole & Margot Botsford,* Assistant Attorneys General, with him) for the defendants.

*Valerie Epps, Jeanne Baker, & Linda M. Scholle,* for the Civil Liberties Union of Massachusetts and *Judith Mears* for the American Civil Liberties Union, amici curiae, submitted a brief.

WILKINS, J. We have before us a series of questions, certified to us by the United States District Court, District of Massachusetts, concerning various aspects of § 12P of G. L. c. 112, inserted by St. 1974, c. 706, § 1, a section which sets forth certain conditions for the performance of an abortion on an unmarried minor. These questions have been certified to us on the prompting of the Supreme

Court of the United States in *Bellotti* v. *Baird,* 428 U.S. 132, 151 (1976). A brief statement of the process by which these questions have arrived here is appropriate.

In 1974 the Legislature adopted St. 1974, c. 706, entitled "An Act to protect unborn children and maternal health within present constitutional limits." That act added several sections to c. 112 of the General Laws, including § 12P. Section 12P, which is set forth in full in the margin,[3] is the principal target of a constitutional challenge which the plaintiffs addressed to the Federal District Court on October 30, 1974. That section requires parental or judicial approval before a nonemergency abortion may be performed on an unmarried minor. In April, 1975, in a two to one decision, the District Court held that the parental consent provisions of § 12P were constitutionally invalid and ordered the entry of a judgment permanently enjoining the Attorney General and the various district attorneys from enforcing § 12P, "as it relates to parental consent in any fashion." *Baird* v. *Bellotti,* 393 F. Supp. 847, 857 (D. Mass. 1975). The law enforcement officials appealed, as did an intervening defendant, Jane Hunerwadel, a parent of an unmarried minor female of childbearing age. In the Supreme Court, the intervener argued that the District Court should have certified questions concerning

---

[3] "(1) If the mother is less than eighteen years of age and has not married, the consent of both the mother and her parents is required. If one or both of the mother's parents refuse such consent, consent may be obtained by order of a judge of the superior court for good cause shown, after such hearing as he deems necessary. Such a hearing will not require the appointment of a guardian for the mother.

"If one of the parents has died or has deserted his or her family, consent by the remaining parent is sufficient. If both parents have died or have deserted their family, consent of the mother's guardian or other person having duties similar to a guardian, or any person who had assumed the care and custody of the mother is sufficient.

"(2) The commissioner of public health shall prescribe a written form for such consent. Such form shall be signed by the proper person or persons and given to the physician performing the abortion who shall maintain it in his permanent files.

"Nothing in this section shall be construed as abolishing or limiting any common law rights of any other person or persons relative to consent to the performance of an abortion for purposes of any civil action or any injunctive relief under section twelve R."

the construction of § 12P to this court, pursuant to S.J.C. Rule 3:21, 359 Mass. 790 (1971), and that the District Court should have abstained from resolving any constitutional question until this court had answered those questions and construed § 12P.

On July 1, 1976, the Supreme Court of the United States accepted the intervener's argument and vacated the judgment of the District Court, holding "that the District Court should have certified to the Supreme Judicial Court of Massachusetts appropriate questions concerning the meaning of § 12P and the procedure it imposes." *Bellotti* v. *Baird,* 428 U.S. at 151. The Supreme Court noted that its decision on the same day in *Planned Parenthood of Cent. Mo.* v. *Danforth,* 428 U.S. 52 (1976), struck down a statute that created a parental veto over an unmarried minor's right to obtain an abortion. *Id.* at 74. In its opinion in the case now before us the Supreme Court stated that the defendants argued that § 12P could be construed not to contain a parental veto, and that, although the statute prefers parental consultation and consent, it permits a mature minor capable of giving informed consent to obtain a court order permitting an abortion without parental consultation if the abortion would be in her best interests. *Bellotti* v. *Baird,* 428 U.S. at 145. On the other hand, the plaintiffs argued in the Supreme Court that the statute gave parents an unbridled veto. *Id.* at 145-146.

In deciding that abstention was appropriate here, the Supreme Court did not indicate that the statute would be constitutional if interpreted as the defendants urged, but merely concluded that the statute was susceptible to the defendants' construction and that the nature of the problem would change materially if the defendants' statutory construction were adopted. "[I]n the absence of an authoritative construction, it is impossible to define precisely the constitutional question presented." *Id.* at 148. That Court recognized that it could not determine then what this court's interpretation might be, "what factors are impermissible or at what point review of consent and good cause in the case of a minor becomes unduly burdensome."

*Id.* at 148. The Supreme Court, "assume[d] that [this court] will do everything in its power to interpret the Act in conformity with its title: 'An Act to protect ... within present constitutional limits.'" *Id.* at 148 n.16.

Before turning to the specific questions asked of us, we should analyze our function in interpreting § 12P. The Federal District Court has the fundamental obligation to determine the Federal constitutional issue. Our role is to construe the statute. But, traditionally, we have regarded the presence of a serious constitutional question under one interpretation of a statute to be a strong indication that a different possible interpretation of that statute should be adopted, if the constitutional issue can be avoided thereby. *Worcester County Nat'l Bank* v. *Commissioner of Banks*, 340 Mass. 695, 701 (1960). See *First Nat'l Bank* v. *Attorney Gen.*, 362 Mass. 570, 595-596 (1972) (Quirico, Braucher, & Kaplan, JJ., concurring), and cases cited. We think the Supreme Court recognized that we might engage in a construction of § 12P so as to avoid, or at least limit, any constitutional problem. We think it is clear as well that, from its title, the Legislature intended to pass an act which was constitutionally acceptable and, even more important, to save as much of the statute's purpose as it could if any explicit statutory provision could not survive constitutional attack. Statute 1974, c. 706, § 2, provides that "[i]f any section, subsection, sentence or clause of this act is held to be unconstitutional, such holding shall not affect the remaining portions of this act."

Our principal advice to the Federal District Court is that we would construe § 12P to preserve as much of the expressed legislative purpose as is constitutionally permissible. The fact that the Supreme Court has not yet defined the permissible scope, if any, of parental involvement in an unmarried minor's decision to seek an abortion makes certain of our constructions of § 12P potentially infirm. If the Supreme Court concludes that we have impermissibly assigned a greater role to the parents than we should or that we have otherwise burdened the minor's choice unconstitutionally, we add as a general principle

that we would have construed the statute to conform to that interpretation.

We should not be understood to say, however, that we are entirely without guidance from the Supreme Court of the United States on the central issue involved here. In *Planned Parenthood of Cent. Mo.* v. *Danforth, supra,* four members of the Court, dissenting on the parental consent issue, joined in the view that parental consent was a constitutionally acceptable precondition to performing an abortion on an unmarried woman under eighteen years of age. See *id.* at 94-95 (White, J., Burger, C.J., & Rehnquist, J., concurring in part and dissenting in part); *id.* at 102-105 (Stevens, J., concurring in part and dissenting in part). Two Justices who joined in striking down Missouri's absolute parental veto expressed a view which seems to find acceptable a statute which "would not impose parental approval as an absolute condition upon the minor's right but would assure in most instances consultation between the parent and child." *Id.* at 91 (Stewart & Powell, JJ., concurring).

With those views of our role in this matter and of the unsettled state of the law on the permissible extent, if any, of parental involvement in an unmarried minor's abortion decision, we turn to the nine questions certified to us. Each of the nine questions will be considered in order in sections of the opinion numbered to correspond to the number of the question being answered. The relevant question will be set forth in a footnote to the heading of each section.

1. *The Statutory Standard for Parental Consent.*[4]

This question concerns the standard which should be

---

[4] "1. What standards, if any, does the statute establish for a parent to apply when considering whether or not to grant consent?

"a) Is the parent to consider 'exclusively . . . what will serve the child's best interest'?* (* Appellants' brief before the Supreme Court, p. 23. *But cf. Baird* v. *Bellotti,* D. Mass., 1975 393 F. Supp. 847, at 855.)

"b) If the parent is not limited to considering exclusively the minor's best interests, can the parent take into consideration the 'long-term consequences to the family and her parents' marriage relationship'?* (* Defendants' brief in this court, p. 16.)

"c) Other?"

applied by a parent in deciding whether to consent to an abortion for his or her unmarried daughter. The statute provides no explicit standard. In the District Court, the defendants agreed that a parent could consider matters not exclusively relating to the minor's personal interests. *Baird* v. *Bellotti*, 393 F. Supp. at 855. Before the Supreme Court, the defendants abandoned this position and argued that the only appropriate parental considerations were those which focused on the best interests of the minor. In light of the Court's opinion in *Planned Parenthood of Cent. Mo.* v. *Danforth, supra,* abrogating an absolute parental veto, we construe § 12P so as to avoid any constitutional question, as far as possible, and answer that the parent is to consider "exclusively ... what will serve the child's best interest." We thus answer question 1 (a) in the affirmative and need not answer questions 1 (b) and 1 (c). In many instances, the "best interests of the child" standard has been adopted in this Commonwealth where the rights and concerns of a minor have been in issue. See cases cited in our answer to question 3, *infra* at 752-754.

There is, of course, no penalty if a parent does not apply the proper standard in deciding whether to consent to his or her child's request for consent to an abortion. Our answer may be of assistance, however, in guiding parents' consideration of the question and, as we explain in our answer to the next question, is of importance to any judge to whom the question of judicial consent is presented.

2. *The Statutory Standard for a Judicial Order Granting Consent.*[5]

Section 12P provides that if one or both of the minor's parents refuse consent, "consent may be obtained by order of a judge of the superior court for good cause shown...."

---

[5] "2. What standard or standards is the superior court to apply?

"a) Is the superior court to disregard all parental objections that are not based exclusively on what would serve the minor's best interests?

"b) If the superior court finds that the minor is capable, and has, in fact, made and adhered to, an informed and reasonable decision to have an abortion, may the court refuse its consent based on a finding that a parent's, or its own, contrary decision is a better one?

"c) Other?"

Here there is a statutory standard of "good cause." The second question inquires concerning the role of the judge in applying the "good cause" standard.

We think it clear, answering question 2 (a), that the same considerations referred to in answering question 1 must be applied by a judge of the Superior Court. He must disregard all parental objections, and other considerations, which are not based exclusively on what would serve the minor's best interests. If the judge were to exercise his authority on a standard broader than that to which a parent must adhere, we believe that the Commonwealth, through its judicial arm, could be exercising a power which the Supreme Court has said a State may not exercise. *Planned Parenthood of Cent. Mo.* v. *Danforth, supra* at 74. In any event, the constitutional question is avoided, or at least limited, by our construction that "good cause" means that the judge may give consent to an abortion where it is shown that, in spite of the disapproval of one or both parents, the best interests of the minor will be served if the abortion is performed. In granting consent, the judge, of course, may impose reasonable conditions which will protect those best interests.

Question 2 (b) concerns what a judge must do in passing on the question whether the best interests of the minor will be served. Unless a contrary conclusion is compelled constitutionally, we do not view the judge's role as limited to a determination that the minor is capable of making, and has made, an informed and reasonable decision to have an abortion. Certainly the judge must make a determination of those circumstances, but, if the statutory role of the judge to determine the best interests of the minor is to be carried out, he must make a finding on the basis of all relevant views presented to him. We suspect that the judge will give great weight to the minor's determination, if informed and reasonable, but in circumstances where he determines that the best interests of the minor will not be served by an abortion, the judge's determination should prevail, assuming that his conclusion is supported by the evidence and adequate findings of fact.

3. *Parental Consultation as a Requirement.*[6]

Question 3 asks the extent to which, if at all, a court order for an abortion may be obtained without consultation with the minor's parents. The defendants argued before the Supreme Court, contrary to their earlier views (see *Baird* v. *Bellotti*, 393 F. Supp. at 855), that "a mature minor capable of giving informed consent [may] obtain ... an order permitting the abortion without parental consultation," and that "even a minor incapable of giving informed consent [may] obtain an order without parental consultation where there is a showing that the abortion would be in her best interests." *Bellotti* v. *Baird, supra* at 145.

The defendants argue here that "if a minor has the capacity for informed judgment, the rationale for parental consent ceases..." and, in compelling circumstances, a court may grant consent to an abortion without parental involvement, both where the minor qualifies under "the mature minor rule" and where she does not. The defendants state that a case-by-case consideration will safeguard "the general role for parents contemplated by the Legislature, without jeopardizing the statute's protective concerns." They argue, however, for "parental consultation in all but the most compelling situations."[7]

The Legislature has left no room to apply a mature minor rule where an unmarried minor seeks an abortion without parental consultation. Section 12N of G. L. c. 112,

---

[6] "3. Does the Massachusetts law permit a minor (a) 'capable of giving informed consent,' or (b) 'incapable of giving informed consent,' 'to obtain [a court] order without parental consultation'?* (*See* [*Bellotti* v. *Baird,* 428 U.S. at 144-145]. Defendants contended to the contrary before us. *See also,* c. 112, § 12R.)"

[7] The defendants state further: "While it is difficult to describe the contours of such situations in the abstract, defendants suggest that generally parental consultation should be encouraged in mature minor cases. In other cases consultation should be required unless the Superior Court is convinced, after hearing, that consultation would threaten the minor's safety or well-being or. otherwise adversely affect her best interests. Absent convincing proof of such danger, § 12P should be held to require the Superior Court to withhold authorization for abortion procedures until a minor's parents have been consulted."

inserted by St. 1974, c. 706, § 1, states that, in the absence
of an emergency, no abortion may be performed unless
"the written informed consent of the proper person or
persons has been delivered to the physician performing the
abortion as set forth in [§ 12P]." Section 12N is all-inclu-
sive, manifesting a clear legislative intention that the con-
sent required by § 12P be obtained for every nonemergency
abortion where the mother is less than eighteen years of
age and unmarried. Section 12P in turn is explicit in
stating that a judge should pass on an application for a
consent order only after one or both parents have declined
to consent to the abortion. Section 12P (1) states that a
judge may act "[i]f one or both of the mother's parents
refuse . . . consent." Prior parental consultation is thus con-
templated by the statute. If only one parent is available,
he or she must be consulted. If neither parent is available,
the minor's guardian, a person having similar duties, or
any person who has assumed the care and custody of the
minor must be consulted. We recognize, as G. L. c. 112,
§ 12N, states, that the consent provisions of § 12P have
no application "in an emergency requiring immediate ac-
tion," and presumably where no parent (or statutory sub-
stitute) is available. Although § 12N and § 12P do not deal
with the situation where no parent (or statutory substi-
tute) is available, we have no hesitancy in concluding that
a judge is not barred from granting consent to an abortion
in such a situation.

As we have indicated, it is not our function to determine
whether parental consultation is a constitutionally per-
missible precondition to a court order. We point out, how-
ever, that there is no absolute parental veto inherent in
§ 12P: If the word veto has an application here, it is, by
analogy to the legislative process, a veto which may be
overridden. We also note that the views of the parents
concerning the medical treatment which is to be furnished
their child may have a beneficial influence (a) on the
circumstances under which the abortion is to be performed,
including the quantity and quality of pre-operative coun-
seling, medical care, and personal attention, and (b) on

the amount, source, and quality of post-operative assistance and counseling, including birth control counseling, which the minor will receive.

If these and other considerations in support of parental consultation do not justify mandatory parental consultation where there is no emergency and where at least one parent, or a person with equivalent responsibilities, is available, § 12P must be construed to require as much parental consultation as is permissible constitutionally. In such a situation, the judge will have to determine whether circumstances exist which make prior parental consultation impermissible constitutionally.

The defendants argue that the Legislature did not intend to abrogate any common law right to consent to an abortion which a minor had and that a mature minor at common law could obtain a valid court order authorizing an operation without prior parental consultation. We think that the effect of §§ 12N and 12P is clear in abrogating any such common law right to an abortion, assuming its existence. The last paragraph of § 12P (2), which is set forth in n.3 above, does not preserve any such common law right. Indeed, it suggests that any common law right of the minor is foreclosed. That language preserves "any common law rights of any *other* person" (emphasis supplied) relative to consent to the performance of an abortion for the purposes of a civil action or of a petition under G. L. c. 112, § 12R, to enjoin the performance of an abortion. That language does not refer to the minor.[8]

We think, however, that it may be of assistance to the District Court to state the extent to which a mature minor rule of the character urged by the defendants would have been applicable if § 12P had not been passed. By doing so,

---

[8] It is unclear whose consent the Legislature may have had in mind by this language in § 12P (2). Certainly it could not have been the potential father. Approximately four weeks prior to the enactment of St. 1974, c. 706, this court, by a divided vote, determined that even a husband's consent could not be a condition precedent to the performance of an abortion on his wife (*Doe* v. *Doe,* 365 Mass. 556 [1974]), a view which was accepted by the Supreme Court in *Planned Parenthood of Cent. Mo.* v. *Danforth, supra* at 69.

we will disclose the impact of § 12P on the rights of minors.

A mature minor rule has been accepted in other jurisdictions, thereby relaxing the harshness of a rigid requirement of parental consent. See, e.g., *Younts* v. *St. Francis Hosp. & School of Nursing, Inc.*, 205 Kan. 292, 301 (1970) (seventeen year old, skin graft to fingertip); *Gulf & S.I.R. Co.* v. *Sullivan*, 155 Miss. 1, 10 (1928) (seventeen year old, small pox vaccination); *Lacey* v. *Laird*, 166 Ohio St. 12, 14 (1956) (eighteen year old, plastic surgery to nose). See also 1 F. Harper & F. James, Torts § 3.10, at 235 & n.23 (1956); W. Prosser, Torts § 18, at 103 & n.51 (4th ed. 1971); Restatement (Second) of Torts § 59 (1965); Restatement of Torts § 892 (1939); Bennett, Allocation of Child Medical Care Decision-Making Authority: A Suggested Interest Analysis, 62 Va. L. Rev. 285, 289-290 (1976); Pilpel & Zuckerman, Abortion and the Rights of Minors, 23 Case W. Res. L. Rev. 779, 782-783 & n.13 (1972). The mature minor rule calls for an analysis of the nature of the operation, its likely benefit, and the capacity of the particular minor to understand fully what the medical procedure involves. See Wadlington, Minors and Health Care: The Age of Consent, 11 Osgoode Hall L.J. 115, 117-119 (1973). Judicial intervention is not required. If judicial approval is obtained, however, the doctor is protected from a subsequent claim that the circumstances did not warrant his reliance on the mature minor rule, and, of course, the minor patient is afforded advance protection against a misapplication of the rule.

Our cases have given no explicit sanction to the view that, without parental involvement, an unemancipated but mature minor may consent to an operation, where one or both parents are available and where there is no medical emergency. The defendants argue that the mature minor doctrine has been applied by Justices of this court when permitting a bone marrow transplant from a healthy minor to a critically ill sibling. However, in all of these cases, parental consent was obtained, and, in some cases, judicial approval of the operation was granted where the minor

donor clearly was not one capable of granting an informed consent to the operation. These cases, therefore, involve both parental and judicial authorization of an operation and do not rely on the application of the mature minor rule. See Baron, Botsford & Cole, Live Organ and Tissue Transplants from Minor Donors in Massachusetts, 55 B.U.L. Rev. 159 (1975).

There are cases, however, where a minor's views have been permitted to influence judicial action. In custody matters, the well-being of the child is paramount (*Vilakazi* v. *Maxie, ante,* 406, 409 [1976]) and the preferences of the child may be considered. *Purinton* v. *Jamrock,* 195 Mass. 187, 201 (1907). *Dumain* v. *Gwynne,* 10 Allen 270, 275 (1865). *Curtis* v. *Curtis,* 5 Gray 535, 537 (1855). A marriage ceremony involving a freely assenting minor, acting without parental consent, has been held valid, although, because of the minor's age, the ceremony was performed in violation of law. *Parton* v. *Hervey,* 1 Gray 119, 121 (1854). Where a child has been placed in someone's care by agreement of the parents, the wishes of the child to remain in that person's care have been given weight. *Curtis* v. *Curtis, supra. Commonwealth* v. *Hammond,* 10 Pick. 274, 275 (1830). We have suggested that, if a minor of sufficient maturity assents to being taken from one having legal custody of him, the act would not involve the crime of false imprisonment. *Commonwealth* v. *Nickerson,* 5 Allen 518, 527 (1862). None of these cases, of course, concerns nonemergency medical treatment of an unemancipated minor wishing to act without parental involvement.

We have never held or implied on common law grounds that a physician may operate on a minor, where there is no emergency, without the consent of at least one parent. We have indicated that such an unauthorized operation constitutes an intentional tort. See *Reddington* v. *Clayman,* 334 Mass. 244, 246-247 (1956). The Legislature's treatment of the subject of consent to medical treatment of a minor has been consistent with the general common

law principle that parental consent is necessary for medical services to be performed in the absence of an emergency.[9]

Although our opinions do not explicitly support a mature minor rule, we have never been asked to apply such a principle. Particularly, we have never been asked to pass on the necessity of parental consent to a medical procedure to which a minor may be entitled by constitutional right. The case for a mature minor rule has particular force in such a case. This circumstance no doubt has prompted the Attorney General and all the district attorneys of the Commonwealth to urge that parental consultation is not always required in an abortion situation.

We conclude that, apart from statutory limitations which are constitutional, where the best interests of a minor will be served by not notifying his or her parents of intended medical treatment and where the minor is capable of giving informed consent to that treatment, the mature minor rule applies in this Commonwealth. In such a case, although judicial involvement is not required, court approval may be sought, and, if it is, a judge may give effective consent to the performance of an operation or other treatment. We have already indicated, however, that as to abortions there is a statutory requirement of parental consultation. Thus we stress that the answer to question 3 is negative. Parental consultation for an abortion is required by statute in all cases, other than in an emergency or where there is

[9] General Laws c. 111, § 117, states that a physician's treatment of an assenting minor suffering from a venereal disease does not constitute an assault or an assault and battery.

General Laws c. 112, § 12E, authorizes a drug dependent minor twelve years of age or older to consent effectively to hospital and medical care related to the diagnosis or treatment of his or her drug dependency (except methadone maintenance therapy) and expressly disclaims any need for parental consent.

General Laws c. 112, § 12F, as appearing in St. 1975, c. 564, which we discuss more fully below in answering question 6, sets forth a legislative mature minor rule (or perhaps an emancipated minor rule, or both), allowing consent for most medical and dental care, but the rule is inapplicable to abortions for minors who have never been married and does not include all minors who might qualify in particular circumstances for application of a mature minor rule.

no parent (or the equivalent) available. Our discussion of the mature minor rule as to operations generally has no application to nonemergency abortions because parental consultation, if possible, is mandated by statute. To the extent the District Court concludes that parental consultation is not permissible constitutionally, but only to that extent, is parental consultation not required. If there is a situation where parental consultation is not possible or where parental consultation (and notification) may not be imposed because of constitutional limitations, the judge should make precise findings in support of his conclusion because, in such a case, the parents will not be involved and cannot challenge the judicial determination by appeal. These findings should include a determination of the degree of seriousness of the operation, its benefit to the minor, and the capacity of the minor to understand the circumstances and to consent to the operation.

Although we cannot say that there will never be a circumstance where parental consultation may be dispensed with where the minor is not capable of giving informed consent to a nonemergency operation, we expect that, as a general rule, the best interests of a minor will not be served by dispensing with consultation with the parents of such a minor. As we have said, however, as to abortions, parental consultation is mandatory.

4. *Parental Notification.*[10]

This question assumes that prior parental consultation is not required in all instances and inquires concerning the extent to which notification of the minor's parents may be ordered for good cause by a Superior Court judge either before or after he acts on a minor's request for consent. We point out that our answer to question 3 indicates that, before a judge acts on a petition for consent, the minor's parents must be consulted and, therefore, the assumption made in the fourth question is not applicable unless con-

---

[10] "4. If the court answers any of question 3 in the affirmative, may the superior court, for good cause shown, enter an order authorizing an abortion, (a), without prior notification to the parents, and (b), without subsequent notification?"

stitutional requirements forbid requiring parental consul-
tation. If they are available, the parents of a minor must
be notified of any proceeding brought by her to obtain
judicial consent to an abortion and will be entitled to
participate. If, however, parental consultation is barred by
constitutional considerations in certain instances, perhaps
notification of the judicial proceeding will be barred as well.
We say that, apart from constitutional restraints, notifica-
tion to the parents of the judicial proceeding, in advance
if possible, is required, and thus we answer question 4 in
the negative. We recognize that there may be instances in
which the parents are unavailable and the judge must act.
In such a case, consultation is impossible, but subsequent
notification of the proceeding may not be. Unless barred
by constitutional considerations, notification of a minor's
parents concerning the judicial proceedings is required.

5. *Procedures for Expeditious Decisions*.[11]

The presence or absence of the opportunity for prompt
disposition of any judicial proceeding under § 12P is an
important consideration in measuring the burden which
§ 12P places on the minor's constitutional right to an abor-
tion. Thus, by question 5, the District Court has inquired
whether we will prescribe a set of procedures to expedite
the application, hearing, and decisional phases of the Su-
perior Court proceeding. We answer question 5 in the
affirmative, in the sense that, if the operation of the system
requires our involvement by rule or order, we will become
involved. We note, however, that the Superior Court has
its own rulemaking power, and, in the first instance, we
would defer to the judges of that court to determine what,
if any, specific rules are needed.

Every court day questions are presented to Superior
Court judges which require prompt decision. Section 12P
provides just one example of the kind of matter in the
Superior Court which calls for early disposition. We are

_____

[11] "5. Will the Supreme Judicial Court prescribe a set of procedures
to implement c. 112, § 12P which will expedite the application, hearing,
and decision phases of the superior court proceeding provided there-
under? Appeal?"

not certain how far present practices need to be supplemented by specific rules relating to requests for orders under § 12P.

Prompt resolution of a § 12P proceeding may be expected. On any court day, hardly any person in the Commonwealth is more than one or two hours' travel from a court house where a Superior Court judge is available to process an application under § 12P. The proceeding need not be brought in the minor's name and steps may be taken, by impoundment or otherwise, to preserve confidentiality as to the minor and her parents. The judge can issue an order of notice providing for an early hearing. The defendants will be the parents, if they have denied their consent, and, according to the suggestion to us in his brief, if the parents are not available or need not be consulted because of a constitutional bar to consulting them, the Attorney General will be the appropriate defendant. Section 12P (1) provides that the judge need not appoint a guardian for the minor. If, however, in his discretion, the judge determines to appoint counsel or a guardian ad litem for the minor (a point discussed under question 7), the process need not be long delayed. After determining what representation the minor may need, the question of parental consultation may have to be considered, and finally, perhaps at a somewhat later date depending on the answer to the parental consultation issue, the judge will have to determine whether he should authorize the abortion. At each stage, a record of the proceedings will be preserved. The judge will appreciate the need for an early determination of the issues and the filing of findings of fact. If more is needed to expedite a § 12P proceeding, such as the availability of application forms for unrepresented minors, we anticipate that the Superior Court, aided by clerks of court and the Attorney General, will take the necessary steps to implement the necessary procedures. If, as we have said, the involvement of this court is required to assure expeditious implementation of § 12P proceedings, we answer the first portion of question 5 in the affirmative.

The second portion of question 5 concerns the prospect

of expeditious appeals. We have no question concerning the speedy disposition of any appeal. The case of *Doe* v. *Doe*, 365 Mass. 556 (1974), concerning an abortion question, was reported to this court for decision on March 12, 1974, and argued before the full court on March 13, 1974. We entered a dispositive order on March 14, 1974. Although this prompt disposition may have been facilitated by the fact that the case was entered in the Supreme Judicial Court for the county of Suffolk and promptly reserved and reported for decision by a single justice of this court, we believe that an early hearing and decision on appeal from a judgment of a Superior Court judge may also be achieved. The Appeals Court, to which the appeal would be taken, is in as good a position as this court to provide a prompt hearing and early disposition. A request for direct appellate review by this court might be filed in this court, and, if it were, that request would be acted on promptly. In any event, this court has general superintendence over the lower courts and at any stage may transfer any case to it for disposition or other action, if the need should arise. G. L. c. 211, § 4A.

6. *The Relationship of § 12P and G. L. c. 112, § 12F.*[12]

The sixth question concerns the differences between (a) the grounds and procedures for showing good cause under § 12P and (b) the standard and procedures contained in G. L. c. 112, § 12F, as appearing in St. 1975, c. 564, which is set forth in the margin.[13] The 1975 amendment to §12F,

---

[12] "6. To what degree do the standards and procedures set forth in c. 112, § 12F (Stat. 1975, c. 564), authorizing minors to give consent to medical and dental care in specified circumstances, parallel the grounds and procedures for showing good cause under c. 112, § 12P?"

[13] "No physician, dentist or hospital shall be held liable for damages for failure to obtain consent of a parent, legal guardian, or other person having custody or control of a minor child, or of the spouse of a patient, to emergency examination and treatment, including blood transfusions, when delay in treatment will endanger the life, limb, or mental well-being of the patient.

"Any minor may give consent to his medical or dental care at the time such care is sought if (*i*) he is married, widowed, divorced; or (*ii*) he is the parent of a child, in which case he may also give consent to

which was characterized above as a limited, statutory mature minor rule, was enacted after the decision of the District Court in this case. Section 12F grants doctors, dentists, and hospitals immunity from liability for damages for failure to obtain parental or similar consent to emergency treatment when delay would endanger the life, limb, or mental well-being of the patient. Section 12F next provides that a minor who is married, widowed, or divorced may consent to medical or dental care, including an abortion or sterilization. Certain other minors, including one who is a parent, is a member of the armed forces, is pregnant or believes herself to be pregnant, or is living apart

medical or dental care of the child; or (iii) he is a member of any of the armed forces; or (iv) she is pregnant or believes herself to be pregnant; or (v) he is living separate and apart from his parent or legal guardian, and is managing his own financial affairs; or (vi) he reasonably believes himself to be suffering from or to have come in contact with any disease defined as dangerous to the public health pursuant to section six of chapter one hundred and eleven; provided, however, that such minor may only consent to care which relates to the diagnosis or treatment of such disease.

"Consent shall not be granted under subparagraphs (ii) through (vi), inclusive, for abortion or sterilization.

"Consent given under this section shall not be subject to later disaffirmance because of minority. The consent of the parent or legal guardian shall not be required to authorize such care and, notwithstanding any other provisions of law, such parent or legal guardian shall not be liable for the payment for any care rendered pursuant to this section unless such parent or legal guardian has expressly agreed to pay for such care.

"No physician or dentist, nor any hospital, clinic or infirmary shall be liable, civilly and criminally, for not obtaining the consent of the parent or legal guardian to render medical or dental care to a minor, if, at the time such care was rendered, such person or facility: (i) relied in good faith upon the representations of such minor that he is legally able to consent to such treatment under this section; or (ii) relied in good faith upon the representations of such minor that he is over eighteen years of age.

"All information and records kept in connection with the medical or dental care of a minor who consents thereto in accordance with this section shall be confidential between the minor and the physician or dentist, and shall not be released except upon the written consent of the minor or a proper judicial order. When the physician or dentist attending a minor reasonably believes the condition of said minor to be so serious that his life or limb is endangered, the physician or dentist shall notify the parents, legal guardian or foster parents of said condition and shall inform the minor of said notification."

from his parents and managing his own financial affairs, are authorized to consent to medical and dental care but not to an abortion or sterilization. If the physician or dentist reasonably believes that the condition of the minor is so serious that life or limb is endangered, he must notify the minor's parents and advise the minor that he has notified his or her parents.

In the Supreme Court of the United States, the plaintiffs pointed to the new provisions of § 12F and argued that § 12F heightened the discrimination between unmarried minors seeking abortions and minors seeking other medical procedures. The Supreme Court declined to pass on the propriety of any distinction in Massachusetts between abortion and other medical procedures, observing that the constitutionality of any distinction will depend on its degree and the justification for it. *Bellotti* v. *Baird, supra* at 149-150. It concluded that any analysis of the degree of distinction between consent for abortions and the consent procedures for other medical procedures could not be made until this court defined the nature of the consent required for abortions. *Id.* at 150. The Supreme Court concluded that "it would not be inappropriate for the District Court . . . to certify a question [to this court] concerning the meaning of the new statute, and the extent to which its procedures differ from the procedures that must be followed under § 12P." *Id.* at 151-152.[14]

The grounds for consenting to an abortion under § 12P, which we have defined as the best interests of the minor, are not different from the standards to be applied in determining whether some other medical procedure should be performed on a minor pursuant to § 12F. In each instance, a physician must exercise his or her medical judgment and

---

[14] The Supreme Court also observed that the claim of impermissible discrimination due to the 1975 statute obviously had not been raised in the District Court, but was "subject to inquiry through an amended complaint, or perhaps by other means." *Id.* at 151. We are not informed of any amendment of the District Court complaint. At oral argument counsel for the plaintiffs indicated that the "equal protection" point would be presented subsequently in the District Court.

the minor must consent to the procedure as being in his or her best interests.[15]

The difference between § 12P, concerning an abortion, and § 12F, concerning other medical operations, lies in the procedures which must be followed in arriving at the conclusion that the particular operation will be in the best interests of the minor. Under § 12F, a married, widowed, or divorced minor may consent to any and all medical services without the intervention of either his or her parents or of a court. Thus, the requirements of § 12P concerning parental or judicial approval of an abortion are inapplicable to such minors. All other minors described in § 12F seeking abortions must pursue the procedures of § 12P, although they are free to consent to any other medical procedure (except sterilization) without the involvement of their parents or of a judge. Minors not described in § 12F have only their common law rights to consent to medical services, except as expanded or limited by statute. If these classifications of minors can be sustained against any equal protection challenge advanced by the plaintiffs, no "saving construction" of § 12P (or perhaps of § 12F)[16] will be necessary.

In this court, particularly in oral argument, the plaintiffs have urged that we should declare that the statutory distinction between minors seeking abortions and those seeking other medical services is invidiously discriminatory under art. 10 of the Declaration of Rights of the Constitution of the Commonwealth, our Massachusetts "equal protection" clause. See *Opinion of the Justices,* 357 Mass. 827, 830 (1970). No question under the Constitution of the Commonwealth has been certified to us. Indeed, none has been raised yet in the District Court. The matter has not been briefed by any party beyond the plaintiffs' truncated

---

[15] We put aside in this analysis those minors who are not capable of giving an informed consent. In each case (§ 12F and § 12P), consent may have to be obtained from one or both parents or from a court.

[16] Statute 1975, c. 564, by which G. L. c. 112, § 12F, was amended, does not contain a severability clause as does St. 1974, c. 706, amending G. L. c. 112, § 12P. See St. 1974, c. 706, § 2.

argument in the one and one-half pages of their brief which constitute their entire discussion of the sixth question certified to us. We decline to deal with any State constitutional issue in answering the questions put to us. However, in answering the sixth question we are aware that equal protection of the laws considerations are substantially the same under the State and Federal Constitutions and that, as with other matters we have considered, the interrelationship of § 12P and § 12F (the 1975 statute) must be interpreted so as to avoid constitutional problems as far as possible.

For this reason, in response to question 9, *infra* 765-766, we discuss the possible consequences of a determination that one or more of the classifications made by §§ 12P and 12F are impermissible on Federal equal protection of the laws grounds.

7. *Appointment of Counsel for an Indigent Minor.*[17]

If a judge of the Superior Court determines that the best interests of an indigent minor would be served by the appointment of counsel to represent the minor, the court has the power to appoint counsel for the minor to assist her in the assertion of her constitutional rights. Section 12P (1) states that the judicial proceeding concerning consent "will not require the appointment of a guardian for the mother." However, § 12P (1) does not forbid the appointment of a guardian ad litem to represent the minor, and thus implies that a judge may make such an appointment. We doubt that the Legislature intended in all cases that an indigent minor should proceed without counsel in seeking authorization of an abortion, whether she is proceeding in opposition to her parents or in the absence of parental involvement. If the mere existence of the "burden" of seeking judicial consent to an abortion is not unconstitutionally onerous (and apparently these plaintiffs have not yet so claimed in the District Court), the circumstances that an indigent minor may have counsel ap-

---

[17] "7. May a minor, upon a showing of indigency, have court-appointed counsel?"

Baird *v*. Attorney General.

pointed for her lightens the "burden" and tends to make the requirement more acceptable constitutionally. Even apart from the positive implication of § 12P, a judge of the Superior Court has the power to appoint counsel for an indigent minor in these circumstances. See G. L. c. 220, § 2.[18]

Although all parties agree on an affirmative answer to question 7, the brief for the Attorney General adverts to the possible argument that a judge may not appoint counsel unless public funds are available for the payment of the reasonable fees of the minor's counsel.[19] If the issue should arise, an obligation to pay the reasonable fees of a minor's attorney might be found even in the absence of an appropriation. See *O'Coin's, Inc.* v. *Treasurer of the County of Worcester*, 362 Mass. 507, 510, 515 (1972) ; G. L. c. 213, § 8. If a county must pay the cost of court-appointed counsel in a criminal case, regardless of prior appropriation, even where the appointment of counsel may be mandated only by court rule and not by constitutional considerations (see *Abodeely* v. *County of Worcester*, 352 Mass. 719, 723-724 [1967]), we see no reason to deny counsel for an indigent minor in asserting a constitutional right to an abortion in a State-mandated civil proceeding before a judge of the Superior Court.[20]

In order to avoid a constitutional question concerning

---

[18] Rule 17 (b) of the Massachusetts Rules of Civil Procedure authorizes a judge to appoint a guardian ad litem to represent a minor in the proceeding before him or to "make such other order as [he] deems proper for the protection of the [minor] . . . ." 365 Mass. 763 (1974).

[19] We hope that significant numbers of competent attorneys would be willing to act without fee in these circumstances and would advise clerks' offices of their willingness to serve so that a list of attorneys could be used in making such appointments. If such is not the case, we do not know that funds have not been appropriated, and will not be appropriated, for expenses of this character.

[20] In *Payne* v. *Superior Court of Los Angeles County,* 17 Cal. 3d 908 (1976), the Supreme Court of California held (four to three) that, in certain circumstances, an incarcerated, indigent defendant may be entitled constitutionally to the appointment of counsel to handle his defense of a civil action. The court there disclaimed any power to order that counsel should be paid from public funds. *Id.* at 920 n.6. In the

the burden on the assertion of a minor's constitutional rights which would arise from a contrary interpretation, we construe the statutes of the Commonwealth to authorize the appointment of counsel or a guardian ad litem for an indigent minor at public expense, if necessary, if the judge, in his discretion, concludes that the best interests of the minor would be served by such an appointment.

8. *The Physician's Reasonable and Good Faith Belief as a Defense.*[21]

A physician who believes, reasonably and in good faith, that a minor is eighteen or more years old or has been married, divorced or widowed, although it is not a fact, has a defense to criminal prosecution for performing an abortion on that minor. We answer question 8 in the affirmative. The fifth paragraph of § 12F, quoted in n.13 above, provides such a protection to a physician. Although § 12F is not concerned primarily with abortion procedures, the Legislature did not except abortions from the broad grant of protection of the fifth paragraph of that section, as it did exempt abortions from certain other provisions of § 12F. See the third paragraph of § 12F. A construction of § 12F which would not extend to physicians performing abortions the same protection extended to physicians performing other operations would raise a constitutional question which we avoid by the construction of § 12F which we have adopted.

9. *Other Comments.*[22]

Question 9 invites this court, if it wishes, to make any

---

*Payne* case, the fundamental issue in the underlying civil action did not involve the incarcerated, indigent defendant's assertion of a constitutional right.

[21] "8. Is it a defense to his criminal prosecution if a physician performs an abortion solely with the minor's own, valid, consent, that he reasonably, and in good faith, though erroneously, believed that she was eighteen or more years old or had been married?"

The word "valid" may not be an appropriate one in the context of the question.

[22] "9. Will the Court make any other comments about the statute which, in its opinion, might assist us in determining whether it infringes the United States Constitution?"

other comments about § 12P which might assist the District Court in determining whether § 12P infringes the Constitution of the United States. Rule 3:21 of this court, setting forth the certification procedure, contemplates that only questions of law will be certified. Question 9 is not a question of law. However, question 9 presents a practical solution to the problem that there may be questions concerning § 12P which we have not been asked, but as to which we have views which might be instructive to the District Court in this bifurcated, cooperative decision making process. Of course, even if not asked, we might volunteer unsolicited comments on State law which could be largely dispositive of the matter before the District Court.[23] Thus, as we indicated we would in our answer to question 6, we take this opportunity to comment on the consequences of a determination that the differing procedures of § 12P and § 12F, as interpreted by us apart from the impact of constitutional considerations, do not survive an equal protection of the laws challenge.

The plaintiffs argue that it is invidious to permit a pregnant minor to consent on her own to any operation, except abortion and sterilization, no matter how serious the operation, as § 12F does on its face, while denying her the right on her own to consent to an abortion, which in most instances (at least in the first trimester) is a relatively minor procedure.[24] The plaintiffs also challenge the statutory distinction between an unmarried minor and a divorced minor who is given the right to an abortion without parental or judicial consent.

---

[23] See *Tarr* v. *Republic Corp.,* 116 N.H. 99, 104-105 (1976), where the Supreme Court of New Hampshire answered an uncertified question and thereafter the Federal courts treated that answer as dispositive. See *Tarr* v. *Manchester Ins. Corp.,* 544 F.2d 14 (1976).

[24] The Supreme Court of California has said that a legislative purpose would be irrational if it were "to deny to minors life-saving therapeutic abortions for lack of parental consent while permitting all other pregnancy-related surgical and medical care without the necessity of such consent." *Ballard* v. *Anderson,* 4 Cal. 3d 873, 881 (1971) (four to three decision). That court also said (at 883) that "[t]here is no rational basis for discriminatorily singling out therapeutic abortion as the

If there is no constitutionally acceptable basis for the legislative distinction between abortions (and sterilization) and other medical procedures, the question will arise as to what the effect of such a determination is on § 12P and § 12F. In that circumstance, § 12F might be construed as applying to all operations, including abortions, in effect eliminating either or both of the parental and judicial consent requirements of § 12P. On the other hand, § 12P might be saved if the scope of § 12F, as it applies to medical procedures for pregnant minors, is construed to apply only to certain medical procedures associated with a determination of pregnancy and with counseling concerning abortion. The choice, if available constitutionally, is for the Legislature to make, and, of course, it has not done so explicitly. However, we would construe the legislative intent behind the 1975 act (§ 12F) as (a) not favoring an implied repeal of the parental and judicial consent provisions of § 12P and (b) as favoring a restriction on the authorization for consent in § 12F, if necessary to avoid an unconstitutional discrimination, in so far as pregnancy-related operations are concerned.

If the distinction between pregnancy-related operations and other operations cannot withstand an equal protection challenge (and the plaintiffs make no such argument in their brief here), the parental (and judicial) consent provisions of § 12P must fail as far as is necessary to eliminate the constitutional defect, because we see in § 12F a general legislative intent to eliminate any necessity for parental and judicial consent to operations on minors in the circumstances described in § 12F.

---

only type of pregnancy-related surgical care which requires parental consent."

The Supreme Court of Washington has held that statutory distinctions concerning parental consent of the type made by §§ 12F and 12P (but providing a parental veto) do not withstand equal protection scrutiny. *State* v. *Koome,* 84 Wash. 2d 901, 910 (1975) (five to four decision). The court noted the possibility that a requirement of parental consultation might be permissible. *Id.* at 909, 914.

Until the constitutionally unacceptable distinctions, if any, between § 12P and § 12F are defined, we are unable to furnish any further guidance on how § 12P and § 12F should be construed.

## CONCLUSION

Apart from the effect of any restrictions which are imposed on the Legislature's regulation of abortions because of constitutional considerations, we answer the principal questions as follows. Parental consultation is required in every instance where an unmarried minor seeks a nonemergency abortion. If the minor's parents (or their equivalent) are unavailable, parental consultation is not required. In deciding whether to consent to an abortion for their unmarried minor daughter, parents should consider only her best interests. If one or both parents refuse consent, a judge of the Superior Court may authorize an abortion for an unmarried minor if he rules that an abortion is in the minor's best interests. The parents, if available, must be notified of the court proceeding and must be allowed to participate in it. The judge in his discretion may appoint counsel or a guardian ad litem for the minor in the court proceedings. The court proceeding must be handled expeditiously.

A stay of the enforcement of § 12P was entered by a Justice of the Supreme Court on July 30, 1976, and the Justices summarily denied motions to vacate the stay. 429 U.S. 892 (1976). By its terms that stay expires when this court renders its decision on the certified questions. In order to give the parties and the District Court an opportunity to consider what, if any, further interlocutory order might be appropriate, the clerk of this court will not transmit an attested copy of this opinion to the clerk of the United States District Court, District of Massachusetts, in answer to the questions certified until twenty days after the receipt by him and by the parties of copies of this opinion from the Reporter of Decisions. Otherwise, the Reporter of Decisions and the clerk of this court are

to follow the procedure for transmission of answers which is set forth in *Hein-Werner Corp.* v. *Jackson Indus. Inc.,* 364 Mass. 523, 530-531 (1974).

*So ordered.*