733 So.2d 429 (1999)
In the Matter of ANONYMOUS, a minor.
No. 2980560.
Court of Civil Appeals of Alabama.
March 4, 1999.
PER CURIAM.
An unemancipated minor appeals from the denial of a waiver of parental consent for an abortion.
*430 The minor filed her petition on February 10, 1999, pursuant to § 26-21-4, Ala. Code 1975. The trial court appointed a guardian ad litem for the unborn child, fictitiously named "Baby Teresa."[1] On February 16, 1999, the trial court held a hearing, at which the minor testified. In addition, three other witnesses, who were called by the guardian ad litem for the unborn child, testified: the director of Sav-A-Life; the director of COPE Crisis Pregnancy Center; and a woman who "do[es] counseling ... at Sav-A-Life." Following the hearing, the trial court denied the waiver, stating in its order that the minor was not mature and well-enough informed to make the decision to have an abortion and that the performance of an abortion was not in the minor's best interest.
Section 26-21-4(e), Ala.Code 1975, provides that "[a] minor who elects not to seek ... or does not ... obtain consent from either of her parents ... may petition... the juvenile court for a waiver of the consent requirement." A "petition for waiver of parental consent may be denied only if the court specifically finds both that (1) the minor is immature and not well enough informed to make the abortion decision on her own and (2) that performance of the abortion would not be in her best interests." Ex parte Anonymous, 595 So.2d 497, 498 (Ala.1992) (emphasis in original). Our supreme court has held that a minor's decision to seek the advice of legal counsel and to invoke the judicial process may, in itself, indicate maturity. Id.
At the time of the hearing, the minor was 16 years old and was 5 to 7 weeks pregnant. She is a junior in high school, has a "B" average, and intends to go to college. She plans to pursue a pre-med course of study and become an obstetrician. She is a member of one academic and four social clubs at school. In addition, she has been in the school band for five years and hopes to obtain a band scholarship for college. She has had a part-time job for the last year and a half and works 25 hours per week. She has her own checking and savings accounts, and she pays her own car insurance, car repair bills, and cellular telephone bills.
She testified that her parents were divorced and that each had remarried. She said that, although she thought both parents would consent to her having an abortion, she did not want to ask for their consent because she thought each would blame the other for her predicament and she did not want to cause problems between her parents.
The minor testified that the father is an 18-year-old high-school senior who plans to attend college next year on a football scholarship. She said that he agrees with her decision to have an abortion. She said she knew that if she continued her pregnancy she would not be dismissed from school or ostracized because, she said, there were "plenty of" other young women in her school who were pregnant. She testified that she wanted an abortion because neither she nor the father is able to support a child or ready to assume the responsibility of parenthood.
The minor testified that she had not consulted with a representative of any organization, such as Sav-A-Life or COPE, that opposes abortion. She testified, however, that she had been advised of the physical, mental, and emotional complications that could arise from having an abortion. She talked to a 23-year-old friend who had had an abortion and who now has *431 a child. She also talked to a counselor at the women's clinic where she had her pregnancy test. The counselor explained the abortion procedure and the risks involvedincluding the risk of hemorrhage, death, or not being able to have children in the future. The counselor advised her of the possible long-term emotional consequences of having an abortion and informed her that there were agencies that could help her cope if any complications arose.
The minor said she was aware that there are state and private agencies that could help if she decided to keep the baby. She stated that she knew she could get Medicaid benefits, food stamps, and housing for herself and her child if she chose not to terminate the pregnancy.
The trial court characterized "the issue of [the minor's] maturity" as a "difficult call." It found that some of the evidencesuch as the minor's academic record, extracurricular activities, employment history, and financial experiencetended to indicate maturity. The trial court concluded, however, that other evidence demonstrated immaturity. The court described the following evidence indicating immaturity: (1) her inexperience in making important decisions about her future, specifically her decision to engage in sexual relations without using birth control; (2) her failure to seek counseling from a facility that opposes abortion, from her parents, or from a mature relative or friend; (3) her statement that she did not wish to continue her pregnancy because she "didn't want to be fat for the prom"; and (4) her failure to consider what the trial court referred to as "the spiritual aspects of her decision [to have an abortion]."
On the first indicator of immaturity described by the trial courtthe minor's inexperience as evidenced by her decision to engage in sexual relations without using a contraceptivewe think the following statements by the Alabama Supreme Court are instructive:
"In every case where a minor female is involved, we would not find the experience to be expected of an adult female. Hence the trial judge's preoccupation with the experience of this minor is misplaced; no minor female would be able to pass the experience test if adult-level experience were a criterion."
Ex parte Anonymous, 618 So.2d 722, 725 (Ala.1993).
For the second indicator of immaturity described by the trial courtthe minor's failure to seek counseling from a pro-life advocate, from her parents, or from a mature friend or relativewe hold that the court's conclusions are unsupported by legal authority, logic, or the evidence in this case. Although our supreme court has stated that a minor who does seek the advice of a pro-choice advocate thereby demonstrates maturity, see Ex parte Anonymous, 595 So.2d 497, 499 (Ala.1992), it has never stated the conversethat a minor who does not seek the advice of a group opposed to abortion thereby demonstrates immaturity. To draw such a conclusion from the statements of the supreme court in Ex parte Anonymous, 595 So.2d at 499, would be illogical.
The trial court's conclusion that the minor is immature because she did not seek the advice of her parents before deciding to have an abortion begs the question. That error in logic occurs when one assumes as a premise for his argument the very conclusion he intends to prove. The issue before the court was whether the minor should have been required to consult her parents about having an abortion, or whether she was mature enough to make the decision on her own. The trial court begged the question when it assumed that the minor was not mature enough to make the decision on her own because she had not consulted her parents about the decision.
Explaining its conclusion that the minor demonstrated immaturity by consulting a 23-year-old confidante rather than a more *432 mature relative or friend, the trial court, in its order denying the waiver, stated:
"If [the minor] wanted mature counseling, but chose not to seek it from her parents, could she not have sought out some mature relative or friend of the family and had a confidential talk with her? She testified that there was no such family member. Her confidante, instead, was a 23-year-old friend, who herself had undergone an abortion and now had a child out of wedlock. The Court is not satisfied with that woman's ability to advise nor that the Petitioner's consulting her is evidence of maturity."
The 23-year-old confidante did not testify. Therefore, the trial court had no evidentiary basis for its determination that the confidante did not have the ability to advise the minor. Moreover, the issue was not the confidante's ability to advise, but what the minor's consulting the confidante indicated about the minor's ability to make a mature and well-informed decision. It is fairly self-evident that a minor who, before deciding to have an abortion, consults a friend who has both terminated a pregnancy and carried a pregnancy to term, has demonstrated some commitment to reasoned decisionmaking.
For the third indicator of immaturity described by the trial courtthe minor's statement that she wanted to terminate her pregnancy because she "didn't want to be fat for the prom"we agree with the trial court that such a statement bespeaks a self-centeredness that, although not unheard-of among teenagers, indicates immaturity. If that were the only reason given by the minor for her decision to have an abortion, then the trial court's finding that the minor was not mature might be appropriate. However, given the totality of the minor's testimony, we think it apparent that she has sufficient maturity to be granted a waiver pursuant to § 26-21-4. The trial court appears to have held the 16-year-old minor to the maturity standard of an adult female, and thereby to have disregarded what our supreme court said in Ex parte Anonymous, 618 So.2d 722 (Ala.1993):
"Whether we agree with Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), or not, the Supreme Court of the United States has determined that the main focus should be on the woman's or minor female's right to decide what should be done with her body within certain defined limitations. The constitutionality of the parental consent statute rests mainly on the premise that a child of tender years may not be thoroughly mature enough to make the decision to terminate a pregnancy.... However, if it can be demonstrated that she is sufficiently mature or that an abortion would be in her best interest, then she should be given a waiver of parental consent."
Id. at 725 (emphasis added).
As to the fourth indicator of immaturity described by the trial courtthe minor's failure to consider "the spiritual aspects of her decision [to have an abortion],"we have serious doubts concerning the constitutionality of the trial court's conditioning the grant of a waiver, in whole or in part, on religious grounds. Our supreme court has stated:
"[I]t is not the court's responsibility to superimpose its judgment or its moral convictions on the minor in regard to what course of action she should take with reference to her own body."
Ex parte Anonymous, 618 So.2d at 725.
After carefully reviewing the record, we conclude that there was ample evidence indicating that the minor is mature and well informed. We hold that the bases for the trial court's decision to deny the waiver either were not supported by the evidence as a whole or were legally and logically invalid. Therefore, the judgment of the trial court is reversed, and the cause is remanded. Because of the importance of time, the trial court is directed to grant the waiver not later than 4:00 p.m. on March 4, 1999. If the trial court does not *433 grant the waiver by that time, then effective 4:01 p.m. on that date a judgment granting the waiver is rendered by this court.
REVERSED AND REMANDED WITH INSTRUCTIONS OR REVERSED AND JUDGMENT RENDERED.
YATES, MONROE, and CRAWLEY, JJ., concur.
ROBERTSON, P.J., and THOMPSON, J., concur in the result.
ROBERTSON, Presiding Judge, concurring in the result.
I concur in the reversal, but I write specially to express my disagreement with this court's decision to deny the guardian ad litem's motion for leave to file an appellate brief. See majority opinion, 733 So.2d at 430 n. 1. In view of the majority opinion in In re Anonymous, 720 So.2d 497 (Ala. 1998), as well as the concurrence in part and dissent in part, it appears that Rule 17(c), Ala.R.Civ.P., would permit the appointment of a guardian ad litem to represent the interests of the fetus. It follows that when the trial court has made such an appointment, the guardian should be entitled to appear before an appellate court that is considering whether the trial court properly denied a waiver of parental consent to the minor pursuant to §§ 26-21-1 et seq., Ala.Code 1975, and should be allowed to submit a brief in support of the trial court's judgment, as the guardian sought to do here.
THOMPSON, J., concurs.
NOTES
[1] In In re Anonymous, 720 So.2d 497 (Ala. 1998), the Alabama Supreme Court held that a guardian ad litem appointed to represent the interests of the fetus at the hearing of a petition for waiver of parental consent had no right to appeal the trial court's decision granting the waiver. A majority of the court did not address whether the trial court had the authority to appoint a guardian for the fetus. Likewise, in this case, we do not address the propriety of appointing the guardian, and we have denied the guardian's motion to file a brief in support of the trial court's order.