803 So.2d 529 (2001)
In the Matter of ANONYMOUS, a Minor.
2000824.
Court of Civil Appeals of Alabama.
May 21, 2001.
*531 PER CURIAM
On May 8, 2001, an unemancipated minor, acting pursuant to § 26-21-4, Ala. Code 1975, filed a petition seeking a waiver of parental consent for an abortion. On May 11, 2001, the trial court held a hearing, at which only the minor testified. The trial court entered an order denying the minor's petition for a waiver of parental consent; the minor appealed.
"Under Alabama law, no person, subject to certain exceptions, may use any instrument, medicine, drug, or any other substance or device to terminate the pregnancy of an unemancipated minor unless that person `first obtains the written consent of either parent or the legal guardian of the minor.'" Matter of Anonymous, 770 So.2d 1107, 1108 (Ala.Civ.App.2000) (citing § 26-21-2(3) and § 26-21-3(a), Ala. Code 1975). A minor may petition the court for a waiver of the requirement that a parent or legal guardian consent to her having an abortion. The Parental Consent Statute is codified at § 26-21-1 et seq., Ala.Code 1975. In enacting that statute, our legislature set forth the purpose of the statute as follows:
"(a) It is the intent of the legislature in enacting this parental consent provision to further the important and compelling state interests of: (1) protecting minors against their own immaturity, (2) fostering the family structure and preserving it as a viable social unit, and (3) protecting the rights of parents to rear children who are members of their household.
"(b) The legislature finds as fact that: (1) immature minors often lack the ability to make fully informed choices that take account of both immediate and long-range consequences, (2) the medical, emotional and psychological consequences of abortion are serious and can be lasting, particularly when the patient is immature, (3) the capacity to become pregnant and the capacity for mature judgment concerning the wisdom of an abortion are not necessarily related, (4) parents ordinarily possess information essential to a physician's exercise of his best medical judgment concerning the child, and (5) parents who are aware that their minor daughter has had an abortion may better insure that she receives adequate medical attention after her abortion. The legislature further finds that parental consultation is usually desirable and in the best interests of the minor."
§ 26-21-1, Ala.Code 1975. Thus, in addition to having the purpose of protecting the rights of parents to rear their children, fostering the family structure, and protecting minors from their own immaturity, the Parental Consent Statute presumes that parental consultation on the decision whether to have an abortion is usually in the minor's best interests.
A minor may file a waiver-of-parental-consent petition in the juvenile court in the county in which she resides or in the county in which the abortion is to be performed. § 26-21-4, Ala.Code 1975. The trial court is required, with some exceptions, to rule on the minor's petition within 72 hours of the time the petition is filed. § 26-21-4(e), Ala.Code 1975. The Parental Consent Statute provides that the requirement for a parent's consent to a minor's obtaining an abortion shall be waived where the trial court finds:
"(1) That the minor is mature and well-informed enough to make the abortion decision on her own; or
"(2) That performance of the abortion would be in the best interest of the minor."
§ 26-21-4(f), Ala.Code 1975.
In this case, the decision made by the trial court was not whether the minor *532 should have an abortion. Rather, the decision the trial court was called upon to make was whether the minor should be permitted to have an abortion without first consulting her parents and obtaining their consent. After hearing the minor testify, the trial court concluded that the minor should not have the abortion without her parents' knowledge and consent.
The minor is 17 years old; she was 8 weeks pregnant at the time of the hearing. She is a straight-A student at her high school, and she is very active in extracurricular activities. The minor plans to attend college, and she has been awarded two college scholarships. The minor has a part-time job, and she is saving her earnings from that job for her college education. The minor testified that her baby's father is 18 years old and that he also plans to attend college. She testified that the baby's father supports her decision to have the abortion and that he will pay for the abortion procedure.
No evidence before the trial court indicated that the minor's parents would react inappropriately to the news of her pregnancy or that their input would not be in her best interests. The evidence indicates an intact, fully functional family, which appears capable of dealing with this unfortunate situation. The family attends church together; the minor testified that she had discussed abortion with her parents only when at church services and that her parents "really did not say much" about abortion but that they were "against it pretty much." She also stated that her parents had never discussed with her what their reactions might be if she were to become pregnant. Although the minor testified that she did not have a close relationship with her parents, she later testified that her mother was so thrilled she cried when the minor was chosen as a member of the majorette squad. The trial court is allowed to consider the relationship of the child with her parents. See Ex parte Anonymous, 618 So.2d 722, 724 (Ala. 1993).
The minor testified that she had talked to nurses at Planned Parenthood and at two medical clinics that perform the abortion procedure; she also said she had spoken to a "lady" at a local health department. The minor also said she had consulted a friend whose sister-in-law had had an abortion. The minor testified that she had been made aware of alternatives to having an abortion. She stated that those alternatives included rearing the child herself, placing the child for adoption, or living at a "maternity house" during her pregnancy and for up to 30 days after she gave birth. The minor testified that the "maternity house" would arrange for the baby to be placed in foster care until such time as she could assume responsibility for the baby. The minor testified that she rejected the alternatives to abortion because she wanted to go to college in order to have a career and wanted to be a majorette while in college.
Regarding the abortion procedure, the minor testified that she would be under local anesthesia during the procedure and that the procedure involved using "an aspirator, which is like a vacuum or sucking machine. And they go in there around the uterus wall and they just suck it out. That's what they told me." The minor testified that she had been informed of some of the risks of the procedure, which, she testified, included infection, bleeding, and the possibility of becoming sterile. The minor did not testify in a manner that indicated she knew of any of the long-term psychological or emotional effects of having an abortion. See § 26-21-1(b)(1) and (2), Ala.Code 1975; Matter of Anonymous, 770 So.2d at 1108.
*533 The minor testified that she had asked the personnel at the medical clinic at which she planned to have the abortion to allow her to speak with a physician; although she was told she would be able to speak with a physician, the clinic later refused that permission and did not allow the minor to do so. The minor testified that two other medical facilities also refused to allow her to speak with a physician about the abortion procedure. The record does not indicate why the medical facilities denied the minor's request to seek the advice of a physician.
In denying the minor's petition for a waiver of parental consent, the trial judge stated that she had concerns about the minor's maturity and about whether the minor was sufficiently informed about the abortion procedure, especially because she had not been able to speak with a physician as she had tried to do. In explaining her concern that the minor had not been allowed to speak with a physician and that, therefore, the minor was not sufficiently well informed to make the abortion decision on her own, the trial judge noted that most adults do not have root canals performed without speaking to the dentist before the procedure. The trial judge stated that she was extremely concerned, and that the minor should be concerned, that the facility the minor had chosen to perform the abortion had reneged on its assurance that she could speak to a physician before having the abortion. The judge stated that she was not convinced the minor would cancel the abortion if she did not feel comfortable with the physician who would ultimately perform the abortion. The trial judge concluded that "[the minor is] scared and she is nervous and she needs the helping hand of a seasoned, dedicated professional [who] does not mind giving ten or fifteen minutes of [his or her] time."
In Ex parte Anonymous, 618 So.2d 722 (Ala.1993), our supreme court stated that when the facts are undisputed, the ore tenus rule has no application and the appellate courts must determine whether the trial court "`misapplied the law to the undisputed facts.'" Ex parte Anonymous, 618 So.2d at 725 (citing Matter of Anonymous, 515 So.2d 1254, 1256 (Ala.Civ.App.1987)). Although we apply that standard in this case, the evidence presently before this court reveals that the minor had limited knowledge of the abortion procedure, that she had not exhibited knowledge of the long-term psychological and emotional effects of the abortion procedure, and that her attempts to educate herself by speaking with a physician had been unsuccessful. Absent a finding that the waiver of parental consent would be in the minor's best interest, the waiver may be granted only when the petitioner is able to prove to the trial judge that she is mature enough to make such a monumental decision on her own and that she is well-informed concerning the medical procedure and the physical risks and psychological consequences of having an abortion. See § 26-21-4(f), Ala.Code 1975. We cannot conclude that the trial court erred in finding that the minor's having an abortion without consulting her parents would not be in her best interests. See § 26-21-4(f)(2). She has also failed to prove that she is mature enough and sufficiently wellinformed to make this decision without consulting her parents. See § 26-21-4(f)(1). The trial court's finding that the minor was not sufficiently mature and wellinformed was well-reasoned and was reached out of a concern for the minor's safety and best interests. We conclude that the trial court did not misapply the law to the undisputed facts, and, therefore, that the judgment of the trial court is due to be affirmed. See Ex parte Anonymous, 618 So.2d at 725.
*534 Although our supreme court set forth the standard of review we have utilized above, this court suggests that the ore tenus rule might apply in an action where a minor seeks a waiver of parental consent for an abortion. Section 26-21-4, Ala.Code 1975, clearly contemplates that the trial court will conduct a hearing at which the minor testifies. The Parental Consent Statute mandates that the trial court make "written and specific factual findings and legal conclusions supporting its decision," after the minor presents her evidence. § 26-21-4(g), Ala.Code 1975. If the legislature has required such fact-finding by the trial court, this court concludes that that fact-finding should be attributed some significance or deference. Otherwise, there would be no need for the legislature to require a hearing or "specific factual findings"a petition for a waiver of parental consent could be conducted by way of written submissions, and appeals would be handled, as they are on review of summary judgments, by reviewing those written submissions de novo, i.e., by determining whether the trial court misapplied the law to the undisputed facts. See Rogers Found. Repair, Inc. v. Powell, 748 So.2d 869, 871 (Ala.1999). This court believes that the legislature purposefully imposed the Parental Consent Statute's requirements that the trial court conduct a hearing, receive testimony, and make "specific factual findings and conclusions." See McDonald v. State, 32 Ala.App. 606, 609, 28 So.2d 805, 807 (1947) ("A legislature will not be presumed to use language without any meaning or application.").
An appellate court's review of a proceeding conducted on a minor's petition for a waiver of parental consent to an abortion is limited to considering a transcript of the testimony. However, testimony does not necessarily equate to facts, especially in a one-sided, nonadversarial proceeding such as that fashioned by our legislature and set forth in the Parental Consent Statute. Clearly, one viewing witnesses and hearing their oral testimony will make many observations that cannot and will not be converted to the written word. In a case like this, the trial court, as the fact-finder, has the advantage of seeing the minor while she testifies. Thus, in making a determination regarding the minor's level of maturity, it may make observations and conclusions regarding the minor's physical appearance, her tone of voice, her expressions, and her overall demeanor and emotional state. However, Ex parte Anonymous, 618 So.2d 722, suggests that the trial court may not be permitted to disbelieve a minor's testimony based on its observations. To say that the ore tenus rule has no application whatever in these cases is to deny a major purpose of the hearing required by the Parental Consent Statute. This causes particular concern for this court, which has reviewed too many cases in which a minor seeking a waiver of parental consent to an abortion testifies in an almost rehearsed manner that is virtually identical to the testimony detailed in many of the published opinions of the appellate courts of this state. We conclude that a trial court's findings on factual issues such as the level of a minor's maturity should be afforded deference in an action where the minor seeks to obtain an abortion without her parents' knowledge and consent.
AFFIRMED.
THOMPSON and PITTMAN, JJ., concur.
MURDOCK, J., concurs specially.
YATES, P.J., and CRAWLEY, J., dissent.
*535 MURDOCK, Judge, concurring specially.
The trial court was called upon to decide whether, consistent with the requirements of Alabama's parental-consent statute (Ala. Code 1975, § 26-21-1 et seq.), the minor should be allowed to have an abortion without first consulting with her parents and obtaining their consent. The trial court reached a judgment that she should not.
Even if the ore tenus rule does not apply (see discussion infra), this court cannot substitute its judgment for that of the trial court, nor its findings of fact for those made by the trial court. Neither this court nor our Supreme Court has ever held that a "de novo" standard applies to appellate review of trial courts' decisions in such cases. E.g., In re Anonymous, 770 So.2d 1107, 1110 (Ala.Civ.App.2000) (applying a "plainly and palpably wrong" standard).
Thus, two questions are presented in cases such as this: 1) Is there sufficient evidence in the record that we may conclude that the trial court did not err to reversal in its factual findings? 2) Did the trial court apply the law correctly to its findings?
As to the former, and turning first to the specific factual issue whether the minor was well-enough informed, I agree with the per curiam opinion. The Alabama Legislature has made it clear that there is a presumption in Alabama law that parental consultation and consent will be obtained before a minor may obtain an abortion. As the per curiam opinion notes, our legislature expressly stated its purpose in adopting Alabama's parental-consent statute, including "fostering the family structure and preserving it as a viable social unit," and "protecting the rights of parents to rear their children." § 26-21-1(a), Ala.Code 1975. The legislature also noted that "parents ordinarily possess information essential to a physician's exercise of his best medical judgment concerning the child" and that "parents ... may better insure that [their minor daughter] receives adequate medical attention." § 26-21-1(b), Ala. Code 1975. Accordingly, the legislature concluded that "parental consultation is usually desirable and in the best interests of the minor." Id.[1]
Consistent with its purpose in adopting the parental-consent statute, the legislature expressed its concerns that there be "fully informed choices that take account of both immediate and long-range consequences" and that "the medical, emotional and psychological consequences of abortion are serious and can be lasting." § 26-21-1, Ala.Code 1975. I agree that, on the record before us, we cannot conclude that the trial court erred to reversal in finding that the minor was not well-enough informed as to potential immediate and long-range medical, emotional, and psychological consequences of having an abortion.
The trial court also found that the minor was not sufficiently mature to decide, without the input of her parents, to abort her unborn child. With respect to this and the trial court's other factual findings, and based on its reading of previous decisions by our Supreme Court and this court, Judge Crawley states in his dissent: "The ore tenus rule has no application when the facts are undisputed, as they are in this case. Ex parte Anonymous, 618 So.2d 722 *536 (Ala.1993). `The role of the appellate court is, therefore, to determine whether the trial court "misapplied the law to the undisputed facts." Matter of Anonymous, 515 So.2d 1254, 1256 (Ala.Civ.App.1987).'" 803 So.2d 529, 541 (emphasis omitted; quoting Ex parte Anonymous, 618 So.2d at 725). In my view, such reasoning skips a critical, first analytical step.
"Testimony" and "facts" are two different things. Witnesses give testimony; courts find facts. Of course, in a conventional case in which the whole function of the trial is to resolve a dispute between two or more parties in an adversarial context,[2] that a "fact" is undisputed is dispositive. There is no need in such a context for "findings" as to such a fact, much less an ore tenus presumption to support such findings. The very nature of the proceeding is one of resolving a dispute. If a given fact is not "disputed," there is nothing for the trial court to resolve in that situation.[3]
The proceeding now before us, however, is of a different nature. It is a unilateral proceeding in which, in one sense, all of the testimony is undisputed. Yet the legislature has charged the trial court with conducting a hearing and receiving the unilateral testimony of the minor, with the opportunity to observe her bearing, demeanor, and appearance while testifying. The legislature then specifically charges the trial court with responsibility for assessing the minor and her testimony and "issu[ing] written and specific factual findings." § 26-21-4(g), Ala.Code 1975.
In a proceeding in which the trial court has been charged with the responsibility of deriving facts without the aid of an adversarial process, the absence of an adversary to expressly concede a fact to which the minor testifies (or even tacitly concede a fact by not presenting testimony to the contrary) cannot make the witness's testimony "undisputed" in the conventional sense that justifies removing the trial court's inherent and traditional role of evaluating witnesses and their demeanor and credibility.
Furthermore, the issue of maturity is, by its very nature, not one which is susceptible to a wholly objective measurement. In this sense, much of the "testimony" presented in the courtroom will be in the form of the witness's bearing, demeanor, mannerisms, physical appearance, and voice inflection. Words that may, in print, suggest maturity, may be "disputed" by the witness's nonverbal "testimony." Thus, that which may appear undisputed on the printed page, may very well be disputed *537 by other information known to the trial judge, but not to a reviewing appellate court, because the trial judge was at the hearing and the appellate court was not.[4]
It is inherent in the nature of the legislatively prescribed hearing that the trial court make findings as to such matters as the minor's age and other factors affecting her maturity, not only based on the substance of the minor's words, but also on the court's observations. To say that the ore tenus rule should not apply in such cases is, in my opinion, to deny the hearing the operation intended by the legislature.
As previously has been observed:
"Our supreme court has held that the ore tenus rule has no application when the facts are undisputed. Ex parte Anonymous, 618 So.2d 722 (Ala.1993). That opinion did not, however, overturn Hall v. Mazzone, 486 So.2d 408 (Ala. 1986), and other cases regarding the ore tenus rule. `The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of [the witness].' Id., 486 So.2d at 410."
In re Anonymous, 650 So.2d 919, 921 (Ala. Civ.App.1994) (emphasis added). As to the issue of the maturity of the petitioner at issue, that opinion further noted:
"The trial court's order states that the minor child `did not exhibit through her carriage, demeanor, and deportment, the ability and/or maturity to make a knowing and informed choice.' ... The trial judge had personal contact with the minor child and was `thereby afforded an opportunity for firsthand observation of [her] demeanor, whereas this court is bound by the strictures of a written transcript.' Bailey v. Bailey, 560 So.2d 1076, 1077 (Ala.Civ.App.1990)."
650 So.2d at 921-22. In that case, Presiding Judge Robertson reasoned, and today's per curiam opinion reiterates, that if the ore tenus rule were not applicable, "a petition for a waiver of parental consent could simply be filed with a supporting affidavit prepared by counsel or the minor child, and the trial judge would be bound by the written evidence in the affidavit." Id. at 922 n. 4.[5]
*538 In my opinion, if a trial court cannot exercise its judgment as to what testimony has sufficient weight and substance to satisfy the court that certain facts have been proven, and as to whether a witness is credible (based on the internal consistency and other substance of her testimony, and the manner in which the witness presents herself and her testimony), there is no meaningful role for that court qua court. If no deference is to be given to the trial court's evaluation of the evidence presented to it, the legislature could have allowed witnesses to submit information via answers to stock questions by audio tape or by written affidavit. The role of the trial court in a hearing is to see and hear the evidence, find facts, and exercise its judgment. It has not been charged by the legislature in Ala.Code 1975, § 26-21-1 et seq., with a merely ministerial task of ensuring that a witness successfully can articulate orally a checklist of statutory or judicially recognized requirements. There is no need for a trial court if deference is not to be given to that court's factual findings generally. Nor is there a need for a trial court if deference is not to be given to that court's ability to see and hear matters that do not transfer from the courtroom to the printed page.
YATES, Presiding Judge, dissenting.
I join Judge Crawley's dissent. I write to emphasize that our supreme court precedent mandates a reversal. I took an oath to uphold the law, and I am constrained by that oath to lay aside any personal convictions that would interfere with following the law.
I also disagree with the main opinion's characterization of the trial judge's role. The main opinion states, "[T]he decision made by the trial court was not whether the minor should have an abortion. Rather, the decision the trial court was called upon to make was whether the minor should be permitted to have an abortion without first consulting her parents and obtaining their consent." 803 So.2d at 531-32. The role of trial judge, as set out by the legislature in § 26-21-4(f), Ala. Code 1975, is to determine:
"(1) That the minor is mature and well-informed enough to make the abortion decision on her own; or
"(2) That performance of an abortion would be in the best interest of the minor."
If the minor is mature and well informed enough to make the abortion decision on her own, or if an abortion would be in her best interests, without her parents consent, then "[t]he required consent shall be waived." § 26-21-4(f). In contrast to the main opinion's holding, the only role of the trial court is to follow the law as set out by the legislature.
*539 The main opinion also appears to hold that it is a requirement that a minor prove that her parents "would react inappropriately to the news of her pregnancy or that their input would not be in her best interests," 803 So.2d at 532, citing Ex parte Anonymous, 618 So.2d 722 (Ala.1993). To the contrary, our supreme court held in Ex parte Anonymous, 618 So.2d 722:
"[A] waiver of consent is in no way contingent on her proving that her parents would disapprove or abuse her should they be consulted regarding her decision to obtain an abortion. In fact, the reaction of the minor's parents is of little consequence as long as she can demonstrate to the court that she is mature enough and well enough informed to make the decision on her own or that an abortion is in her best interest."
618 So.2d at 724-25.
The main opinion further states that "the minor did not testify in a manner that indicated she knew of any of the long-term psychological or emotional effects of having an abortion," 803 So.2d at 532, citing § 26-21-1(b)(1) and Matter of Anonymous, 770 So.2d 1107 (Ala.Civ.App.2000). Section 26-21-1(b)(1) states: "The legislature finds as fact that: (1) immature minors often lack the ability to make fully informed choices that take account of both immediate and long-range consequences." This provision applies to the legislative intent regarding parental consent for a minor; however, it does not address the "maturity" requirement addressed in § 26-21-4 establishing the petitioner's burden of proof for a waiver of parental consent. In Matter of Anonymous, this court held that the minor's testimony regarding the abortion procedure demonstrated maturity, because of the resources she had sought. The testimony in Matter of Anonymous, 770 So.2d at 1108, indicated these facts:
"After her visit to that [health] center, the petitioner then sought advice at another health center that performs abortion services. At that second center, the petitioner and another adult counselor talked about the options available to the petitioner with respect to her pregnancy. The petitioner testified that she had considered alternatives to terminating her pregnancy, but that she had ruled out those alternatives because she wants to go to college and to pursue a career, both of which she believes will be difficult to accomplish if she has a child.
"The counselor at the second health center specifically informed the petitioner that terminating her pregnancy might result in feelings of guilt, and stated that if the petitioner had any uncertainty about undergoing the procedure, she should not do it. The petitioner was also informed of the specific medical risks of abortion. Upon examination by her appointed counsel, the petitioner indicated that these risks included infection, bleeding, hemorrhaging, excessive blood clots, and possible damage to (or loss of) the uterus. However, she testified that in spite of her awareness that there were `a lot of risks,' she was willing to accept those risks, and she testified that she was emotionally and mentally prepared to go through with the procedure, which she plans to undergo at the second health center and to pay for with personal savings. She also testified that in the event of any medical complications from the procedure, she would go to a hospital and telephone her older sister. She also stated that she had been offered post-termination counseling at the health center."
Like the petitioner in Matter of Anonymous, this petitioner explained in detail *540 the nature of the abortion procedure and the risks involved. She further testified that she had been informed that mental health counseling is available both before and after the procedure. The petitioner stated that she will be accompanied by her 18-year-old boyfriend and by an adult female, who had previously accompanied her to obtain information about the procedure. She further testified that she understood the risks and that she was emotionally and mentally prepared to go through with the abortion.
The trial judge based her denial of a waiver on her "concern" that the minor was not allowed to talk with the physician who would be performing the abortion. This is not a criterion to be considered on a petition for a waiver of parental consent. The simple fact that the minor did not speak directly to the physician did not in any way show that she was uninformed or not sufficiently mature to make the decision to have an abortion. Quite the contrary. A reading of the transcript clearly shows a remarkably mature young woman, who has her career plans and goals charted.
Finally, I write to add that although the main opinion repeatedly refers to remarks made by the trial court, it omits what I believe to be a very telling statement that could be construed to show a strong bias, rather than "concern for the minor's safety and best interests." The judge stated, "You know, these people are interested in one thing it appears to me and that is getting this young lady's money." She went on to state, "This is a beautiful young girl with a bright future and she does not need to have a butcher get ahold of her."
The trial court's judgment and the main opinion of this court are contrary to the law of Alabama and that of the United States Supreme Court, and represent blatant judicial activism. There is absolutely no requirement under Alabama law that the minor have a prepetition physician consultation by telephone or otherwise before obtaining a waiver of parental consent. Any attempt by this court to require such a consultation is not within the authority of this court as set out in the Alabama Constitution. Therefore, I dissent.
CRAWLEY, Judge, dissenting.
I must dissent from the affirmance, because, as I state below, our supreme court precedents mandate a reversal. This court is bound by the holdings of our supreme court. Ala.Code 1975, § 12-3-16.
The minor filed her petition on May 8, 2001, pursuant to Ala.Code 1975, § 26-21-4. On May 11, 2001, the trial court held a hearing, at which the minor testified. At the time of the hearing, the minor was 17 years old and 8 weeks pregnant. She is a senior in high school and a straight-A student. She participates in several school activities, including the band and a club that performs community-service projects. She is a senior class officer and a majorette. She plans to attend college in the fall, and she has been awarded two college scholarships. She has a part-time job and puts her earnings in a college savings account. The minor testified that the father is an 18-year-old high-school senior who also plans to attend college in the fall. She stated that he supports her decision to have an abortion.
The minor further testified that her parents would react poorly to the news of her pregnancy. She stated that her parents were opposed to abortion on religious grounds. She explained that she had resorted to the judicial-bypass procedure because she did not feel close enough to her parents to discuss her decision with them.
The minor testified that she had sought the advice and counsel of other adults, including a family friend in her late 30s *541 and that woman's sister-in-law, who had had an abortion. She said she had also sought the advice of health-care professionals at Planned Parenthood, two women's clinics, a residential-care facility, and a local public health department.
She testified that the residential-care facility had explained her options, including rearing the child herself, adoption, an option called "maternity house," and abortion. She testified that the maternity-house option offered a residential setting in which pregnant unwed mothers could reside during their pregnancies and for 30 days thereafter. The maternity house would arrange for the child to be placed in foster care until the mother could assume responsibility for the child herself.
The minor testified that, after considering these alternatives, she had chosen to pursue an abortion. She testified that she did not think she would be able to handle the other options because of her desire to attend college in the fall and her desire to participate in the college majorette squad. The minor explained that, when she was investigating her options, she had asked, at three of the facilities she consulted, to talk to a physician. None of the three would permit her to speak to a physician at that time. The minor did not state her reasons for wanting to speak to a physician.
The minor's testimony included a brief description of the abortion process; she specifically mentioned that she would be placed under some form of anesthesia and that the fetus would be removed by vacuum extraction. She explained that the risks of the procedure included bleeding, infection, possible sterilization, and even death in some cases. She explained that she understood that a nurse could be with her during the procedure to explain the procedure as it occurred, that she would receive counseling immediately before the procedure, and that at any time after the procedure counseling would be available to her. She stated that the father and the family friend from whom she sought advice would accompany her to the clinic and that she would be staying with the family friend after the procedure. She testified that she would do whatever was necessary if she had any complications, including confiding in her parents.
At the conclusion of the minor's testimony, the trial court entered the following findings and conclusions:
"Petitioner has been denied the opportunity to engage in pre-op counseling with the physician, evaluate the physician, or interview and question the physician. Likewise the physician has not evaluated petitioner or furnished information to petitioner so the court finds petitioner is not mature or well-informed and that abortion at this time under the proposed circumstances is contra to her best interests."
The ore tenus rule has no application when the facts are undisputed, as they are in this case. Ex parte Anonymous, 618 So.2d 722 (Ala.1993). "The role of the appellate court is, therefore, to determine whether the trial court `misapplied the law to the undisputed facts.' Matter of Anonymous, 515 So.2d 1254, 1256 (Ala.Civ.App. 1987) (emphasis in original)." Ex parte Anonymous, 618 So.2d 722, 725 (Ala.1993). I conclude that the trial court's finding that the minor was immature and not well informed is not supported by the evidence as a whole.
Our supreme court has held that a minor's decision to seek the advice of legal counsel and to invoke the judicial process may, in itself, indicate her maturity. Ex parte Anonymous, 595 So.2d 497 (Ala. 1992). In making her decision to seek an abortion, the minor consulted a variety of sources, including four health-care providers and two adult women, one of whom had had an abortion. This court has held that a minor demonstrates maturity when *542 she makes her decision by drawing on several different sources, including adult advisors and health-care providers. See, e.g., In re Anonymous, 782 So.2d 791 (Ala. Civ.App.2000) (adults at school, Sav-A-Life, and information from the Internet); In re Anonymous, 770 So.2d 1107 (Ala.Civ. App.2000) (adult counselors at two health centers); In re Anonymous, 733 So.2d 429 (Ala.Civ.App.1999) (adult female friend and staff at pregnancy-testing center); In re Anonymous, 718 So.2d 64 (Ala.Civ.App. 1998) (staff members at three clinics and personal research at the library); In re Anonymous, 655 So.2d 1052 (Ala.Civ.App. 1995) (medical personnel at three clinics); In re Anonymous, 618 So.2d 717 (Ala.Civ. App.1992) (personnel at women's clinic and Sav-A-Life); In re Anonymous, 549 So.2d 1347 (Ala.Civ.App.1989) ("someone" at Health Center). Alabama caselaw has never indicated that consultation with a physician is the sine qua non of being well-informed. Ala.Code 1975, § 26-21-1 et seq., states no requirement that, to show her maturity, a minor must consult a physician before deciding to have an abortion. The trial court, by engrafting the requirement that the minor consult a physician before deciding to have an abortion, went beyond the requirements of the statute and the caselaw interpreting it.
After carefully reviewing the record, I conclude that it contains ample evidence indicating that the minor is mature and well informed. I would hold that the bases for the trial court's order denying the waiver either were not supported by the evidence as a whole or were legally invalid. Therefore, I would reverse the judgment of the trial court and remand the cause with instructions to grant the waiver.
YATES, P.J., concurs.
NOTES
[1] Approximately two weeks ago, this court held a grandparent-visitation statute (§ 26-10A-30, Ala.Code 1975) unconstitutional, recognizing that the right of parents to care for and rear their own children was a fundamental right within the context of the Fourteenth Amendment's protection of liberty. J.S. v. D.W., [Ms. 2990431, May 4, 2001] ___ So.2d ___ (Ala.Civ.App.2001).
[2] Our courts generally exercise their jurisdiction in proceedings that involve "cases or controversies," and our rules of evidence, standards of appellate review, and exceptions to such rules and standards, have been developed in such contexts. Our Supreme Court "has addressed the value and necessity for adversariness in judicial proceedings, holding that when a court has before it no `adversary parties,' it can issue no judgment or decree." In re Anonymous, 720 So.2d 497, 503 (Ala. 1998) (opinion concurring specially in part and dissenting in part).
[3] The exception to the ore tenus rule applies to stipulated or undisputed facts, not necessarily undisputed testimony. In a case in which the testimony of a witness was not disputed by that of any other witness, our Supreme Court upheld a trial court's finding of fact different from what was testified to by the sole witness. Citing Hall v. Mazzone, 486 So.2d 408 (Ala.1986), the Supreme Court noted that "[b]ased on the trial court's apparent reservation about the credibility of [the witness's] testimony, as well as the inference of inconsistent assertions arising therefrom," the trial court could have correctly found as it did. Justice v. Arab Lumber & Supply, Inc., 533 So.2d 538, 543 (Ala.1988). See also Sevigny v. New South Fed. Sav. & Loan, 586 So.2d 884, 886 (Ala.1991); Bownes v. Winston County, 481 So.2d 362, 364 (Ala.1985).
[4] A minor, for example, might testify that she is 17 years of age, while all other observable indicia, including her manner of testifying and her physical appearance, may convince any reasonable factfinder that she has the chronological and emotional maturity of only a 15 year old. The trial court must make a "fact-finding" in such regard. Is the child a 17-year-old or a 15-year-old? Her verbal testimony might not be disputed by the testimony of any other witness. Nonetheless, there could be ample evidence before the court that "disputes" the minor's spoken words. Thus, while her testimony as to her age might be undisputed, the fact of her age would not be. The exception to the ore tenus rule for undisputed facts logically cannot apply.
[5] In Ex parte Anonymous, 618 So.2d 722 (Ala. 1993), our Supreme Court observed that "[w]hen the facts are undisputed," the role of the appellate court is simply "to determine whether the trial court `misapplied the law to the undisputed facts.'" 618 So.2d at 725. The Supreme Court stated this rule by quoting this court's opinion in In re Anonymous, 515 So.2d 1254-55 (Ala.Civ.App.1987). The holding of the Supreme Court in Ex parte Anonymous was merely that the trial court had misapplied the law to the facts of that case. 618 So.2d at 725. Indeed, the decision of this court quoted with approval by the Supreme Court in discussing the ore tenus rule, In re Anonymous, 515 So.2d 1254, is one in which this court made it clear that the ore tenus rule does apply in proceedings of this nature:

"It seems clear to us that the determination of whether to grant a waiver is in the main a question to be first determined by the trial court. This determination if appealed will be subject generally to the ore tenus rule. That is,
"`Where a judgment or decree is entered by a trial court after hearing testimony ore tenus, such judgment or decree is presumed correct and will be reversed only if, after consideration of evidence and all reasonable inferences to be drawn therefrom, judgment or decree is found to be plainly and palpably wrong.'
". . . .
"The following rationale for applying the ore tenus rule in these cases issues from a court of the state whose statute provides a statutory model for waiver of parental consent proceedings:
"`Findings of a judge in this kind of proceeding are entitled to no less deference than that which a reviewing court generally accords findings of fact by a trial court.... As regards a quality such as maturity, we think the judge's opportunity to see and hear the petitioner, her tone of voice, her expressions, and her overall demeanor, placed the judge in a particularly advantaged position to make the factual determination.'
"In the matter of Moe, 12 Mass.App. 298, 423 N.E.2d 1038, 1040 (1981) (citations omitted)."
In re Anonymous, 515 So.2d at 1255-56.