## IN THE MATTER OF MARY MOE.

Suffolk.   July 17, 1981. — July 29, 1981.

Present: BROWN, PERRETTA, & KASS, JJ.

*Minor,* Abortion.  *Abortion.   Constitutional Law,* Abortion.

In a proceeding on a minor's petition under G. L. c. 112, § 12S, for judi-
cial consent to a first trimester abortion, the judge's finding that the
minor was not sufficiently mature to give an informed consent to have
an abortion was not clearly erroneous.  [298-299]

In a proceeding on a minor's petition under G. L. c. 112, § 12S, for judi-
cial consent to a first trimester abortion, the judge erred in denying the
petition on the basis that it would be in her interest to consult with at
least one of her parents after he had made findings that an abortion
was indicated because of the minor's lack of significant life experiences
and her lack of any understanding of the responsibilities of mother-
hood.  [299-305]


PETITION filed in the Superior Court Department on
July 17, 1981.

The case was heard by *Young,* J.

*Lynn G. Weissberg* for the petitioner.

KASS, J.   Mary Moe petitioned in the Superior Court
under G. L. c. 112, § 12S, as appearing in St. 1980, c. 240,
for judicial consent to a first trimester abortion.  A Superior
Court judge held a hearing on July 17, 1981, in which he
followed the procedures described in Standing Order No.
12-80 of the Superior Court Department.

Following the hearing, the judge made a finding that the
petitioner, who is fourteen years old, was not sufficiently
mature to give an informed consent to have an abortion.
Findings of a judge in this kind of proceeding are entitled to
no less deference than that which a reviewing court gener-
ally accords findings of fact by a trial court; i.e., they shall
not be set aside unless clearly erroneous.  Mass.R.Civ.P.

52(a), 365 Mass. 816 (1974). *Building Inspector of Lancaster* v. *Sanderson*, 372 Mass. 157, 160-161 (1977). As regards a quality such as maturity, we think the judge's opportunity to see and hear the petitioner, her tone of voice, her expressions, and her over-all demeanor place the judge in a particularly advantaged position to make the factual determination. We conclude that the determination of insufficient maturity is not without support in the record, even though on the written record we might incline to a different conclusion.[1]

When a judge makes a determination of immaturity, he moves on to the next level of inquiry. Section 12S provides that it then becomes his task to make a judicial determination whether "the performance of an abortion upon her [the petitioner] would be in her best interests."

As to this the judge observed, "It can be said that the objective criteria might warrant terminating this pregnancy. The petitioner's lack of significant life experiences, her lack of any understanding of the responsibilities of motherhood, and the likelihood that she could be further along in the pregnancy than she suspects (thus requiring an abortion by means of medically more complicated and risky procedure), all tend to indicate that action ought to be taken now. Nevertheless, in view of her immaturity, the availability of

---

[1] Unlike the monosyllabic answers of the minor in *H. L.* v. *Matheson,* 450 U.S. 398, 402-403 (1981), the petitioner's responses in the instant case were articulate and informed. She said, in substance, that she thought herself too young to raise a child, that her parents both worked and could not raise her baby, that she did not want to place a baby for adoption, as she wanted to avoid the disruption of her education which a confinement would bring about, and that the medical risks of carrying to term at the age of fourteen were greater than the risks of a first trimester abortion. She described the medical procedures which would be used and the risks attendant on them. Whatever her maturity in an over-all sense, as to the specific question at hand, informed consent to an abortion, the minor demonstrated that she possessed the relevant information, had evaluated that information, and had made decisions based on those evaluations. In cases where nonverbal acts of the petitioner (e.g., giggles or surliness on the one hand, or indicia of composure on the other) give an impression different from the words spoken, it would be helpful if the judge so noted in his decision.

an apparently loving and supporting family, the shallowness of her analysis of her situation," and the State's interest "in encouraging a family rather than a judicial resolution of a minor's abortion decision," as noted in *Bellotti* v. *Baird*, 443 U.S. 622, 648 (1979), the judge determined that he could not "find that it is in the best interests of this minor to proceed without consulting at least one parent." Having so found, the judge denied the petition "with leave to re-petition just as soon as she consults at least one of her parents."

The denial constitutes a final judgment from which an appeal lies to this court. As to the relief sought, viz., consent to an abortion without parental consultation, the action below was dispositive. See *Baird* v. *Attorney Gen.*, 371 Mass. 741, 757-758 (1977); *Cliff House Nursing Home, Inc.* v. *Rate Setting Commn.*, 378 Mass. 189, 191 (1979); *Borman* v. *Borman*, 378 Mass. 775, 778-780 (1979); *Seymour's Case*, 6 Mass. App. Ct. 935 (1978).[2] Accordingly, a panel of this court was convened late on July 17, 1981, and heard the appeal that day. By statute (G. L. c. 112, § 12S), the proceedings were ex parte. The case was decided on July 20, 1981, and, because the petitioner was approaching the end of her first trimester, we issued an order on that day instructing the Superior Court judge to authorize the performance of an abortion. That order said an opinion was to follow.

Once the Superior Court judge decided that an abortion was indicated because of the minor's "lack of any understanding of the responsibilities of motherhood" and that the circumstances "indicate that action ought to be taken now," it was error as a matter of law to condition his consent on the child's first consulting with at least one of her parents. The design of the statute is to provide a mechanism for

---

[2] The ability to appeal from a denial of consent under G. L. c. 112, § 12S, was assumed by the parties and by the court in *Planned Parenthood League* v. *Bellotti*, 641 F.2d 1006, 1011 n.8 (1st Cir. 1981).

judicial consent precisely in those cases where a minor has elected not to seek parental consent. As the court observed in *Planned Parenthood League* v. *Bellotti*, 641 F.2d 1006, 1008 (1st Cir. 1981), the statute provides for a judicial alternative. Section 12S does not condition the avenue of judicial consent upon a demonstration of the undesirability of prior parental consultation. We agree with the Superior Court judge that as a general proposition — not of law, but of human relations — the question whether to have an abortion is better solved with parental guidance than with judicial authorization. But there are, alas, also instances where the relationship between a daughter and her parents is such that this may not be so. As we read the statutory scheme, the Legislature took these considerations into account by providing in § 12S, first for parental consent, but then establishing, "if she *elects* not to seek [emphasis supplied]" parental consent, an alternative which for most teenagers was likely to be a forbidding one: going before a judge. By designing an alternative to parental consent which in its nature is intimidating, the Legislature acted to encourage family resolution and at the same time avoid the constitutional difficulties discussed in *Bellotti* v. *Baird*, 443 U.S. at 647-648.

Consent requirements for abortions have been the subject of considerable judicial scrutiny, notably *Planned Parenthood* v. *Danforth*, 428 U.S. 52 (1976), *Bellotti* v. *Baird*, 428 U.S. 132 (1976) (*Bellotti I*), *Bellotti* v. *Baird*, 443 U.S. 622 (1979) (*Bellotti II*), *H. L.* v. *Matheson*, 450 U.S. 398 (1981), *Planned Parenthood League* v. *Bellotti*, 641 F.2d 1006 (1st Cir. 1981), and *Baird* v. *Attorney Gen.*, 371 Mass. 741 (1977), written in response to *Bellotti I*. In *Danforth, supra*, at 74, the Court held that a State could not, consistent with *Roe* v. *Wade*, 410 U.S. 113 (1973), require parental consent as a condition for an abortion on a minor in the first twelve weeks of pregnancy. The Missouri statute provided for no alternate procedure to obtain consent. The Court in *Danforth*, at 75, wrote: "It is difficult, however, to conclude that providing

a parent with absolute power to overrule a determination, made by the physician and his minor patient, to terminate the patient's pregnancy will serve to strengthen the family unit. Neither is it likely that such veto power will enhance parental authority or control where the minor and the non-consenting parent are so fundamentally in conflict and the very existence of the pregnancy already has fractured the family structure."

*Bellotti II* presented a statutory scheme different from that which now pertains. As it stood when *Bellotti II* came before the Court, § 12S provided no elective judicial procedure. Rather, it provided that in cases where one or both of the minor's parents refused consent, "consent may be obtained by order of a judge of the superior court for good cause shown." G. L. c. 112, § 12S, as appearing in St. 1977, c. 397. Mr. Justice Powell, writing an opinion for a plurality of the Court, determined that § 12S, as then appearing and interpreted in *Baird* v. *Attorney Gen.*, 371 Mass. 741 (1977), fell short of constitutional standards. "It would be unrealistic," he wrote, "to assume that the mere existence of a legal right to seek relief in superior court provides an effective avenue of relief for some of those who need it the most." *Bellotti II*, 443 U.S. at 647. The Court held that under a regulation such as § 12S "every minor must have the opportunity — if she so desires — to go directly to a court without first consulting or notifying her parents . . . . If she fails to satisfy the court that she is competent to make this decision independently, she must be permitted to show that an abortion nevertheless would be in her best interests. If the court is persuaded that it is, the court must authorize the abortion. If, however, the court is not persuaded by the minor that she is mature or that the abortion would be in her best interests, it may decline to sanction the operation." *Id.* at 647-648.

The amendment to § 12S wrought by St. 1980, c. 240, undertook to eliminate the objections made in *Bellotti II* and "to track its 'guidance' rather closely, and . . . successfully." *Planned Parenthood League* v. *Bellotti*, 641, F.2d at 1011.

In consequence, § 12S, as now in effect, establishes the alternate track procedure: parental consent, or, as a perhaps less favored — but no less available — choice, judicial consent.

In *H. L.* v. *Matheson, supra,* the Supreme Court had occasion to consider the constitutionality of a Utah statute which required a physician to notify the parents of a minor prior to performing an abortion for her. No power was conferred by the statute upon the parents to veto the procedure. Upholding the constitutionality of the statute, the Court said that the Utah law was consistent with a State's interest in family integrity and protecting adolescents. 450 U.S. at 411. Massachusetts has made allowance for this interest in a more realistic fashion and one less potentially destructive of family integrity, namely by encouraging parental consultation but providing the judicial alternative as a last resort. Nor are we unmindful that Mr. Justice Powell in *Bellotti II,* 443 U.S. at 648, wrote that a court may take into account parents' "interest in the welfare of their children." But, he adds, "If, all things considered, the court determines that an abortion is in the minor's best interests, she is entitled to court authorization without parental involvement." *Id.* Thus, if a Superior Court judge decides that an abortion is in the best interests of the minor, it is not open, under the election provided by § 12S, to decide that it would be in her even better interest to consult with both or one of her parents. If during the course of the Superior Court proceeding it develops that the minor has not even considered talking to her parents or that the family is, indeed, a loving and supporting one,[3] the Superior Court judge may counsel

---

[3] Although the judge found, in the instant case, that the petitioner's family was loving and supporting, the transcript of the proceedings contains neither questions by the judge nor responses by the petitioner which would warrant that conclusion. She stated that she lived at home with her mother, her father and her younger brother. As to the relationship with her parents, she expressed fear about her father's temper and the consequences of her parents' knowing of her pregnancy. This may or may not have been a justified apprehension, but, at least from the petitioner's point of view, her relationship with her family was an uneasy one.

the petitioner to consult with her family and offer to stay the proceedings while she does so, but he may not insist upon the parental consultation alternative. The practicality of urging parental involvement will depend somewhat on the stage of the petitioner's pregnancy. Nature's clock keeps running. The "decision is one that simply cannot be postponed, or it will be made by default with far-reaching consequences." *Bellotti II*, 443 U.S. at 643.

Our review of the transcript of the hearing discloses nothing that suggests that the judge, in denying consent, might have had in mind something other than that which he articulated, i.e., that parental consultation was desirable in the first instance. As to her "best interests" he found, as we noted above, that the "petitioner's lack of significant life experiences, her lack of any understanding of the responsibilities of motherhood, and the likelihood that she could be further along in the pregnancy than she suspects . . . all tend to indicate that action ought to be taken now." For this there is support in the record. It might be added that the petitioner displayed no signs of ambivalence about her decision, disavowed pressure to obtain an abortion by the fifteen-year old boy who had made her pregnant or from anyone else, had received professional counselling[4] (in addition to legal counselling), and displayed understanding of the medical procedures and risks attendant on them. She had made arrangements with a recognized medical facility, subject to obtaining judicial consent. These are factors, though hardly exclusive, which might be considered in a calculus of the best interests of the minor. In circumstances where insufficient evidence bearing on such factors has been presented to the judge, so that he is unable to conclude that

---

[4] The Supreme Judicial Court has twice stated the principle that, under *Roe* v. *Wade, supra,* the State shall not interpose material obstacles to the effectuation of a woman's counselled decision to terminate her pregnancy during the first trimester. *Framingham Clinic, Inc.* v. *Selectmen of Southborough,* 373 Mass. 279, 288 (1977), citing *Maher* v. *Roe,* 432 U.S. 464, 475-476 (1976). *Moe* v. *Secretary of Admn. & Fin.,* 382 Mass. 629, 647-648 (1981).

an abortion is in the best interests of the minor, the consequence — if the minor stays in Massachusetts — is that she will require parental consent. If the parents deny consent to the petitioner and if she is prepared to offer additional relevant evidence bearing on her best interests, she is not precluded from moving for reconsideration of the petition previously denied.

Because we do not consider the general desirability of parental consultation to be a statutorily permissible factor in the determination of the best interests of the minor, we ordered that the judge, on the basis of the balance of his findings, was to enter an order of authorization pursuant to G. L. c. 112, § 12S.