This is an appeal from a decision rendered in a nonjury action involving consolidated cases. The two cases, styledSasser v. Spartan Food Systems, Inc., Civil Action No. CV-82-658-P and Aronov v. Sasser, Civil Action No. CV-82-686-P, were consolidated, since they present a single issue for resolution: whether an easement claimed by Loyle Wayne Sasser remains valid and in existence. After hearing the case without a jury, the trial court found that the claimed easement was no longer valid or in existence. We affirm. *Page 476 
The facts of this case were submitted to the trial court by a joint stipulation which reads as follows:
"STIPULATED FACTS
 "1. The easement in controversy was created by instrument dated March 22, 1949, whereby Robert and Jo M. Bonner granted to Richard and Elizabeth Duffell an easement for a right-of-way 25 feet in width along the north line of Lot 37, according to the plat of Primrose Heights, as recorded in Plat book 4 at page 58. This instrument further recited: `It is the purpose and intention hereof to provide a means of ingress and egress and space for water line and sewerage to and from Ann Street or to and from the proposed extension of Spruce Street to the property presently owned by the Grantees and to specifically define such right of way.' . . .
 "2. In December 1949 the plat of Bonner Apartments, Inc. (then the owner of the property over which the Duffell easement crossed) was approved by the City of Montgomery and depicted the easement which was described as a `25' easement for driveway to Duffell property.' . . . The Spruce Street extension referenced in the easement grant and shown on the plat was completed in approximately 1951. Through subsequent conveyances, L. Wayne Sasser became owner of the Duffell property (the Grantee of the easement). Through other conveyances hereafter described, Aaron Aronov, individually and as Trustee under certain trusts, became owner of a portion of the Bonner property (the Grantor of the easement).
 "3. In the early 1960s the State of Alabama began acquiring, by purchase and by condemnation, property in the area of the land on which the easement existed for purposes of constructing Interstate Highway 85. After negotiations with the State, Bonner Apartments, Inc. conveyed to the State certain of its land, including the property over which the easement crossed. . . .
 "4. In 1966 the State began negotiations for acquisition of a portion of the Duffell property which was then owned by Georgette Mallet and Marcelle Brake Sasser. L. Wayne Sasser is the husband of Marcelle Brake Sasser who is now deceased. Georgette Mallet, who is also deceased, was the mother of Marcelle Brake Sasser. In connection with the acquisition of a portion of the Sasser property, an appraisal of the land that was to be acquired was prepared. . . . The Plaintiff strongly objects to the admissibility of the appraisal report as being barred by the Dead man's Statute and is hearsay. The Defendant Aronov insists that the appraisal report is admissible. In the appraisal it is noted that the property owner had an easement off Spruce Street along the north property line but that this easement would be extinguished as a result of the proposed acquisition. The appraiser noted: `The acquisition will sever all egress and ingress off Spruce Street and the only egress and ingress will be from the dead end of Bay Street along the West property line.' The appraisal further noted that, as a part of the taking, the State would provide a 20' wide, all-weather road and/or driveway from the dead end of Bay Street to the rear of the residence to provide a means of ingress and egress. The driveway from the dead end of Bay Street to the rear of the residence was constructed by the State of Alabama, Highway Department, and provides a means of ingress and egress to Bay Street from the residence at the present time.
 "5. The State of Alabama and the owners of the Sasser property reached an agreement for conveyance of the property sought by the State and, on November 29, 1966, entered into an agreement wherein the land owners conveyed a portion of their property to the State in return for the sum of $6,175.00. This agreement . . . was executed by Georgette C. Mallet and provided for a `partial taking of land and access.' In connection with this conveyance, a *Page 477 
warranty deed was executed on March 11, 1966, by Georgette Mallet, Marcelle Brake Sasser, and L. Wayne Sasser. . . . The deed contained the following terms:
 "`This conveyance is made for the purpose of a controlled access facility and adjacent service road or roads and the grantor hereby releases and relinquishes to the grantee any and all abutter's rights appurtenant to grantor's remaining property in and to said controlled access facility, provided however that there is hereby reserved [the right of ingress to and egress from the property to Bay Street].'
". . .
 "6. In November 1968, the City Commission of Montgomery authorized the State of Alabama Highway Department to close permanently certain streets in connection with the I-85 project, one of which was Spruce Street. Spruce Street was closed sometime between 1968 and 1971. On or before July 2, 1971, the State of Alabama erected a fence along the right of way of the on-ramp to I-85 West. This fence denied access to Ann Street along the easement.
 "7. In February 1976, Aaron Aronov, individually, and as Trustee under Trust `B' of the Last Will and Testament of Herman Aronov and as Trustee under Trust `A' of the last Will and Testament of Hilliard Aronov, purchased from the state of Alabama, Highway Department, that portion of the Bonner property over which the easement is claimed to exist. Aronov leased a portion of the property to Exxon Corporation, the successor in interest to Humble Oil Refining Company, for erection of a sign. Thereafter, the property was leased to Spartan Foods, Inc. and a Quincy's restaurant was erected on the property. . . ."
As a general rule, when evidence is presented to a trial court sitting without a jury, its findings will be presumed correct and will not be reversed on appeal in the absence of plain and palpable error. Ford v. Alabama By-Products Corp.,392 So.2d 217 (Ala. 1980). However, where the evidence before the trial court is undisputed, as in the present case, this court shall consider the evidence de novo, indulging no presumptions in favor of the trial court's determinations.Stiles v. Brown, 380 So.2d 792 (Ala. 1980).
The easement in question was created by express grant in an instrument of conveyance on 22 March 1949. By the terms of the instrument, the easement traverses the "Bonner" property, providing a means of ingress to and egress from the "Duffell" property. Obviously, the "Bonner" property is a servient tenement and the "Duffell" property a dominant tenement. Accordingly, the trial court correctly found the easement in question to be an easement appurtenant. See 28 C.J.S.Easements, § 4 (1941).
In order to determine whether the easement claimed by Sasser remains valid and in existence, it is first necessary to look to the terms of the conveying instrument so as to determine the intent of the parties. Financial Investment Corp. v.Tukabatchee Area Council, Inc., Boy Scouts of America,353 So.2d 1389 (Ala. 1977).
The stated purpose of the conveyance is to provide a means of ingress and egress "to and from Ann Street or to and from the proposed extension of Spruce Street." (Emphasis added.) The use of the word or evidences an intent by the parties to create only one easement. Likewise, the reference to the proposed extension of Spruce Street denotes that the parties knew the extension of Spruce Street would necessarily intersect with the metes and bounds of the easement described in the instrument. Accordingly, if the proposed extension of Spruce Street was constructed, any easement running along a metes and bounds description contained in the conveyancing instrument would first intersect with Spruce Street, not Ann Street. We must conclude that the intention of the parties as evidenced by the terms of the entire conveyance was to provide a means of ingress to and egress from the "Duffell" property to the closest dedicated street to the east. Thus, when the *Page 478 
proposed extension of Spruce Street became a reality, the easement in question ran only to Spruce Street, and not to Ann Street.
Sasser contends that once the Spruce Street extension was closed, under the terms of the conveyance, an easement running from the "Duffell" property to Ann Street continued in existence. We do not agree.
As we have indicated earlier, once the contemplated Spruce Street extension was constructed, the easement in question ran only from the "Duffell" property to the closest dedicated street to the east, Spruce Street. Accordingly, the superfluous portion of the easement running from Spruce Street to Ann Street was extinguished by the terms of the conveyance as well as by operation of law.
The general rule is that an easement which is given for a specific purpose terminates as soon as such purpose ceases to exist, is abandoned, or is rendered impossible of accomplishment. See e.g., Trustees of Howard College v. McNabb,288 Ala. 564, 574, 263 So.2d 664 (1972). Once the Spruce Street extension was completed, the purpose of providing a means of ingress to and egress from the "Duffell" property to Ann Street ceased to exist, since Spruce Street became the closest dedicated street to the east. Accordingly, the easement extending from the "Duffell" property to Ann Street was forever extinguished. See 25 Am.Jur.2d Easements and Licenses, § 114 (1966).
Similarly, once the Spruce Street extension was closed, the existing easement from the "Duffell" property to Spruce Street was forever extinguished. See Trustees of Howard College v.McNabb, supra.
Accordingly, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON and ADAMS, JJ., concur.