806 So.2d 1269 (2001)
Ex parte ANONYMOUS.
In the matter of Anonymous, a minor.
1001640.
Supreme Court of Alabama.
June 21, 2001.
*1271 MOORE, Chief Justice.
An unemancipated minor petitions this Court to review the judgment of the Court of Civil Appeals affirming the trial court's denial of the minor's petition for a waiver of parental consent to an abortion. We uphold the judgment of the Court of Civil Appeals and deny the petition.

I.
On May 25, 2001, the minor filed a petition in the trial court, seeking a waiver of parental consent to an abortion. Prior to the hearing on her petition, the petitioner's attorney filed a motion seeking the recusal of the trial judge; that motion was subsequently denied.[1] On May 30, 2001, the trial court conducted a hearing on the minor's petition. At the conclusion of the hearing, the trial court orally denied the petition. The trial court then entered a written order denying the minor's petition. The minor appealed to the Court of Civil Appeals, which, on June 8, 2001, affirmed the trial court's judgment, without an opinion.
The record in this case reflects that the minor is 16 years old. At the time of the hearing on her petition, she was approximately 10 ½ weeks pregnant and had just completed her junior year of high school. The minor maintains a straight-A grade point average and is involved in extracurricular activities. She testified that she plans to attend college after she graduates from high school and that she currently has a part-time job. She further testified that the baby's father is 17 years old and that he will support her in whatever decision she makes.
The minor testified that she expects her parents would react poorly to the news of her pregnancy but that she had never discussed with them what their reactions might be if she were to become pregnant. She stated that she and her parents enjoy a good relationship and that her parents *1272 are both physicians.[2]
The minor testified that she spoke with her pediatrician "very briefly" about the medical procedure and that she further discussed her plans with a counselor at a center where pregnancy tests are performed. On at least three occasions, the minor attempted to speak to physicians and/or nurses at local abortion clinics where she considered having the procedure performedbut on each occasion, the facility refused to allow her to speak to a physician or nurse about the abortion procedure. The record does not indicate why those medical facilities denied the minor's request to speak to a physician. The minor also has researched the procedure using the Internet.
The minor described the abortion procedure, stating that she would be placed under local anesthesia during the procedure and that the fetus would be removed by vacuum extraction.[3] She testified that she had been informed of the risks of the procedure, which, she said, included "hemorrhaging, infection, perforation of the uterus, as well as even death. There is also more risk for breast cancer I found out recently. And then mentally you have denial, fear, anger, thoughts of suicide, et cetera." She indicated that she was willing to accept these risks.
The minor testified that she had been made aware of alternatives to having an abortion, including rearing the child herself and placing the child for adoption but that she had rejected those alternatives. She testified that she would inform her older sister of the procedure and that her sister would "probably" assist her if any subsequent medical complications arose.
At the conclusion of the minor's testimony, the trial judge asked pointed question and then expressed her concerns about the minor's maturity and about whether the minor was sufficiently well-informed. In her written order denying the minor's petition for a waiver of parental consent, the trial judge stated:
"The Court finds that the minor is not mature and well-enough informed to make a decision about abortion without the consent of a parent. The minor's parents, both physicians are uniquely equipped to advise her in this life crisis. The minor's testimony describes a functional family that is a viable social unit.
"Neither the minor's testimony nor her carriage, demeanor or deportment satisfied this court's inquiry into her maturity. Further she lacks the reasoning and life experience necessary to make a knowing and informed decision that this life crisis dictates.
". . . .
"This minor is woefully uninformed. Her testimony included a cursory recitation of the alternatives to abortion and her quick dismissal of those alternatives. The minor had a brief conversation with her pediatrician and the pediatrician expressed *1273 concern for the minor's health. The Court finds that this is the only professional advice the minor received.
"Further, this minor was denied an opportunity to discuss the abortion procedure with abortion nurses or abortion doctors. Their refusal to provide the minor with information about abortion compels this court to find that this immature minor is lacking the ability to make a fully informed choice that considers the immediate and long range consequences of abortion.
". . . .
"Therefore it is the finding of this court that the minor is not mature and well enough informed to intelligently decide to have an abortion without parental consent and that under the proposed circumstances and conditions abortion is not in the best interest of the minor."
The minor alleges, as grounds for reversing the judgment of the Court of Civil Appeals and granting her petition that our recent decision in Ex parte Anonymous, 803 So.2d 542 (Ala.2001), incorrectly construed controlling precedent. Specifically, she argues, the ore tenus standard of review should not apply to cases involving the waiver of parental consent to an abortion. We rejected that argument in Ex parte Anonymous, supra, and we now reaffirm the holding in that case.

II.
In 1993, this Court held that a trial judge's decision in a judicial-bypass proceeding is not entitled to an ore tenus presumption of correctness: "The only testimony in this case was by the minor petitioner; therefore, the testimony in this case is undisputed. When the facts are undisputed, the ore tenus rule has no application." Ex parte Anonymous, 618 So.2d 722, 725 (Ala.1993) (citations omitted). A thorough review reveals that that holding was not based on an adequate reliance upon the language, purpose, or intent of the statute. Neither did it rely upon the nature of the proceedings. Rather, that Court recited a long-standing, simple rule of law and applied it without any substantive analysis.
The first question that Court should have asked, and that we ask, is whether the determination of maturity, of whether the minor is well-informed, and of whether an abortion is in the minor's best interest are questions of law or fact. The parental-consent statute itself provides sufficient guidance to answer this question. Section 26-21-4, Ala.Code 1975, specifically requires a hearing and requires the trial court to "issue written and specific factual findings" at the conclusion of the hearing. These requirements are not without meaning. The Legislature clearly contemplated that the trial court was in the best position after conducting a hearingto determine from its observations whether the witness was sufficiently mature and well-informed, or if a waiver of parental consent was in the best interest of the minor. As Justice Lyons said in Ex parte Anonymous, supra: "[I]t would make no sense for the Legislature to require a hearing before a judge during which a transcript of the proceedings must be recorded, followed by specific factual findings and conclusions, if the judge's role was essentially that of a court reporter...." 803 So.2d at 556 (Lyons, J., concurring specially).
Furthermore, this conclusion is consistent with the conclusions reached by other courts. "[T]he determination of maturity is largely an issue of fact ...." Indiana Planned Parenthood Affiliates Ass'n, Inc. *1274 v. Pearson, 716 F.2d 1127, 1136 (7th Cir. 1983). "This requirement [that the petitioner be mature and sufficiently well-informed] implies that the trial judge is to weigh the evidence and determine the credibility of the minor or any other witnesses. These are typical fact-finding functions, performed by a trial court only after hearing the minor's live testimony and viewing her demeanor." In re Doe, 19 S.W.3d 249, 253 (Tex.2000). "[T]he question of what is or is not in `the best interests of the child' is a question of fact...." Schotz v. Oliver, 361 So.2d 605, 607 (Ala. Civ.App.1978). "The determination of the best interests of the child is a question for the trier of fact. `We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle.'" Pace v. Pace, 22 P.3d 861, 865 (Wyo.2001). The "best interests of a child is a matter or question of ultimate fact reviewable under the clearly erroneous standard of review." In re Doe, 89 Haw. 477, 487, 974 P.2d 1067, 1077 (Haw.Ct.App. 1999).
Whether a minor is mature and sufficiently well-informed is a difficult, yet delicate and important, decision that a trial court must necessarily make, not only in light of the testimony of the minor, but also in the context of the minor's demeanor, background, and sundry other circumstances. Even the United States Supreme Court has acknowledged that it is "difficult to define, let alone determine, maturity...." Bellotti v. Baird, 443 U.S. 622, 644, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979).
In making such a difficult determination, a trial judge, observing the testimony, may draw inferences from the minor's composure, analytic ability, appearance, thoughtfulness, tone of voice, expressions, and her ability to articulate her reasoning and conclusions. In fact, no list of the inquiries or considerations pertinent to an assessment of maturity could purport to be exhaustive. Moreover, conclusions drawn from these observations must be carefully weighed in light of the minor's history, including her educational background and her socioeconomic status. "[T]he fact that a minor may be very much an adult in some respects does not mean that his or her need and opportunity for growth under parental guidance and discipline have ended." Bellotti, 443 U.S. at 644, 99 S.Ct. 3035. Needless to say, many of the factors necessary for a trial court to make a determination of a petitioner's maturity do not readily transfer to the record for our consideration. The United States Supreme Court has concluded that "the peculiar nature of the abortion decision requires the opportunity for case-by-case evaluations of the maturity of pregnant minors." Id. at 644, 99 S.Ct. 3035. Such case-by-case evaluations are best made by the trial court.
In In the Matter of Anonymous, 803 So.2d 529, 534 (Ala.Civ.App.2001), the Court of Civil Appeals expressed its concern that attorneys representing minors in waiver-of-parental-consent cases were scripting their clients' testimony.
"This causes particular concern for this court, which has reviewed too many cases in which a minor seeking a waiver of parental consent to an abortion testifies in an almost rehearsed manner that is virtually identical to the testimony detailed in many of the published opinions of the appellate courts of this state."
*1275 The trial court is better suited to evaluate whether the minor's testimony is spontaneous or rehearsed. It is the only court that can perceive furtive or reassuring glances and gestures. Contrary to the petitioner's argument, this Court is not in a better position than the trial court to determine maturity. Clearly, the trial court, as the fact-finder, has the advantage in discerning maturity and best interest.
In Ex parte Anonymous, we affirmed our adherence to the rule of law that when facts are established indisputably, the ore tenus rule has no application. 803 So.2d at 546. However, in special writing to that opinion, which held that the ore tenus standard of review should be applied to waiver of parental consent proceedings, Chief Justice Moore quoted Judge Murdock's special concurrence to the Court of Civil Appeals' majority opinion in that case, which noted that "`[t]estimony' and `facts' are two different things. Witnesses give testimony; courts find facts." Judge Murdock also noted that just because a minor's testimony is unopposed, it cannot be said to be "`undisputed' in the conventional sense that justifies removing the trial court's inherent and traditional role of evaluating witnesses and their demeanor and credibility." Ex parte Anonymous, 803 So.2d at 553, quoting In re Anonymous, 803 So.2d at 536 (Ala.Civ. App.2001) (Murdock, J., concurring specially).
In response, the petitioner argues that our holding in Ex parte Anonymous was made in the mistaken belief that it did not overrule, or seriously call into question, the general rule of law that "where the evidence [as opposed to facts] before the trial court is undisputed, as in this present case, this court shall consider the evidence de novo, indulging in no presumptions in favor of the trial court's determinations." Sasser v. Spartan Foods Sys., Inc., 452 So.2d 475, 477 (Ala.1984) (emphasis added); Fox Trail Hunting Club v. McDaniel, 785 So.2d 1151 (Ala.Civ.App. 2000); and Beavers v. County of Walker, 645 So.2d 1365, 1373 (Ala.1994). Specifically, the petitioner, in her brief, contends that the "fact that the Supreme Court referred to undisputed `evidence' in Sasser not undisputed `facts'is significant." She reasons that because testimony and evidence are synonymous, this Court should overrule our recent decision in Ex parte Anonymous and review the trial court's decision de novo because the evidence, i.e., the minor's testimony, was undisputed.
First, the petitioner's argument ignores the statements in Sasser, Fox Trail Hunting Club, and Beavers, that clearly show that in these cases the facts, not just the evidence or testimony, were not disputed. "The facts of this case were submitted to the trial court by a joint stipulation...." Sasser, 452 So.2d at 476 (emphasis added). "The trial court noted that the facts presented by the parties were largely undisputed." Fox Trail Hunting Club, 785 So.2d at 1153 (emphasis added). "The facts in this case are not disputed...." Beavers, 645 So.2d at 1373 (emphasis added). Thus, even though the rule of law this Court and the Court of Civil Appeals used to describe the lack of evidentiary contentions did not specifically mention "facts," the language of the cases certainly make clear that the facts, as opposed to testimony, were not disputed.
Moreover, the petitioner's argument here focuses on semantics, it ignores the inherent difference between the nature of the proceedings in this case and in Sasser. In Sasser, the controversy involved *1276 adversaries with competing interests who jointly stipulated to the facts underlying their controversy. Here, the very nature of the proceeding is so unlike that of Sasser as to be distinguishable on its face. For instance, as previously stated, the hearing in Sasser was adversarial. Unlike the hearing in Sasser, a hearing on a petition for a waiver of parental consent is not only nonadversarial in nature, it specifically denies those persons who arguably are interested in the outcomei.e., the minor's parents and other family members the right to appear and be heard. Moreover, the mandated secrecy of the hearing prevents anyone, at least in theory, from opposing the minor.
Alabama courts have previously noted the inherent difficulties and dangers of rendering opinions in such unilateral proceedings:
"However, this procedure is not without difficulty in that the opportunity is not generally available for opposing views to present their respective positions, nor are pertinent facts presented as is usual in the adversary nature of our judicial system. The Supreme Court's primary function is one of appellate review, exercised in the context of adversary proceedings. The very nature of our judicial process mandates that decisions be rendered only after all sides have presented their respective views...."
Opinion of the Justices No. 280, 417 So.2d 936, 936 (Ala.1981).
In these types of cases, the usual vigorous and competing advocacy, which typically makes the adversary system an effective means for discovering the truth, is conspicuously absent. As a result, the need for a perceptive, intuitive, and discerning trial judge, as well as his or her specific factual findings, is arguably more necessary than in other cases where opposing advocacy ultimately reveals the facts.
Another significant and distinguishing characteristic of these types of cases is the admission of hearsay evidence. Under § 26-21-4(b), Ala.Code 1975, hearsay evidence is admissible in waiver-of-parental-consent proceedings. This, most certainly, is not the rule of law favored by our courts. "Hearsay is not admissible except as provided by these rules, or by other rules adopted by the Supreme Court of Alabama or by statute." Rule 802, Ala. R.Evid. This evidentiary rule is designed to ensure that the testimony elicited has a degree of reliability and truthfulness. Of course, the testimony offered in ordinary proceedings would be further subject to cross-examination, thus increasing its reliability. Here, neither of those safeguards is present. "The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of the witnesses." Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986). This rule of law is equally, if not especially, important in the context of waiver-of-parental-consent proceedings.
As we held in Ex parte Anonymous, the fact that the petitioner's testimony is not contradicted by other testimony cannot render it undisputed, because there remains the question of its probability as well as the credibility and demeanor of the witness and her vested interest in the result. The following principle is equally well established, both in terms of its acceptance and antiquity: "The court cannot determine, and thereby take away from the jury, the right to pass upon the credibility of oral testimony, even though it *1277 is without conflict." Swindall v. Ford, 184 Ala. 137, 63 So. 651, 655 (Ala.1913).[4] See In re Estate of Frances Williams Messer Trust (No. 220177, May 29, 2001) (Mich.Ct. App.) (unpublished) ("Again, while we do not have the full record on appeal, the pleadings indicate that even where facts were undisputed, the construction of the facts and the assessment of credibility of witnesses was crucial."); Ross v. Paddy, 340 S.C. 428, 532 S.E.2d 612 (Ct.App.2000); Wheat v. Red Star Exp. Lines, 156 Conn. 245, 248, 240 A.2d 859, 861 (1968) ("It was the commissioner's function to find the facts and determine the credibility of witness [sic]; and a fact is not admitted or undisputed merely because it is uncontradicted.") (citations omitted); Yager v. Bellco Midwest, 236 Neb. 888, 897, 464 N.W.2d 335, 341 (1991) ("The compensation court is not bound by the testimony of an expert, nor is this court to determine the weight and credibility of such evidence.... Apparently, that court chose not to believe the undisputed testimony of plaintiff's medical witness, but this court cannot say that decision was erroneous as a matter of law.")
"Following the hearing, the judge made a finding that the petitioner, who is fourteen years old, was not sufficiently mature to give an informed consent to have an abortion. Findings of a judge in this kind of proceeding are entitled to no less deference than that which a reviewing court generally accords findings of fact by a trial court; i.e., they shall not be set aside unless clearly erroneous. As regards a quality such as maturity, we think the judge's opportunity to see and hear the petitioner, her tone of voice, her expressions, and her overall demeanor place the judge in a particularly advantaged position to make the factual determination."
Matter of Moe, 12 Mass.App.Ct. 298, 298-99, 423 N.E.2d 1038, 1039-40 (1981) (citations omitted). See also Redden v. State, 804 So.2d 196, 201 n. 3 (Ala.2001) ("Although we have concluded that the evidence in this case is undisputed, we note that the fact that the trial court viewed the property might warrant a more deferential standard of review.").
"The trial judge was in a far better position than are we to determine, as a matter of fact, the minor's maturity and level of knowledge. The Legislature has mandated that a decision to grant or to deny a waiver of the requirement of parental consent is to rest upon an evaluation of the minor's maturity and level of knowledge. We conclude that because the decision must be based upon facts gleaned from the testimony best evaluated by the trial court, the ore tenus rule should apply."
Ex parte Anonymous, 803 So.2d at 546-47.

III.
The petitioner next argues that, assuming that the minor's maturity is disputed, the underlying facts themselves, i.e., the petitioner's inquiries of medical personnel, her school-related involvement and performances, etc., are not disputed. She argues that any determination of maturity must, in essence, turn on these undisputed facts, and that, therefore, it is proper for this *1278 Court to apply the law to these undisputed facts and to review the trial court's conclusions de novo. "[W]here the facts are not disputed the ore tenus standard does not apply. Furthermore, that standard's presumption of correctness has no application to a trial court's conclusions on questions of law." Beavers, 645 So.2d at 1372 (citations omitted). In essence, the petitioner argues that the trial court's conclusions were incorrect as a matter of law.
Under Alabama's parental-consent statute, § 26-21-1 et seq., Ala.Code 1975, the Legislature expressly found that "parental consultation is usually desirable and in the best interests of the minor." § 26-21-1(b). In reaching this conclusion, the Legislature specifically found:
"(1) [I]mmature minors often lack the ability to make fully informed choices that take account of both immediate and long-range consequences, (2) the medical, emotional and psychological consequences of abortion are serious and can be lasting, particularly when the patient is immature, (3) the capacity to become pregnant and the capacity for mature judgment concerning the wisdom of an abortion are not necessarily related, (4) parents ordinarily possess information essential to a physician's exercise of his best medical judgment concerning the child, and (5) parents who are aware that their minor daughter has had an abortion may better insure that she receives adequate medical attention after her abortion."
§ 26-21-1(b), Ala.Code, 1975. Moreover, it was the "intent of the Legislature to further the important and compelling state interests of: (1) protecting minors against their own immaturity, (2) fostering the family structure ..., and (3) protecting the rights of parents ...." § 26-21-1(a). These goals and findings are clearly sanctioned by the United States Supreme Court. See Bellotti, supra.
However, a minor who elects not to seek consent from either a parent or a legal guardian may petition the courts for a waiver of the requirement that a parent or legal guardian consent to her having an abortion. The requirement of parental consent shall be waived if the trial court hearing the minor's petition finds either: "(1) That the minor is mature and well-informed enough to make the abortion decision on her own; or (2) That performance of the abortion would be in the best interest of the minor." § 26-21-4(f), Ala. Code 1975.
The petitioner would have us hold, as a matter of law, that the facts in the instant case are sufficient to demonstrate that she is mature and sufficiently well-informed to receive a waiver of parental consent for an abortion. This we are not prepared to do. Words in a transcript that suggest maturity may, in fact, be disputed by the delivery of the witness's own testimony and by her demeanor. As we have already stated, the trial court is in the best position to determine these factual issues.

IV.
Judge Yates, in her special concurrence in In the Matter of Anonymous, expressed numerous misgivings regarding our holding in Ex parte Anonymous. 806 So.2d 1267 (Ala.Civ.App.2001) (Yates, P.J., concurring specially). She stated, "[T]hese cases [involving a waiver of parental consent] will no longer require the thoughtful judicial review I have seen this court give over the years in deciding these hard cases; I am afraid Ex parte Anonymous *1279 will result in this court's merely giving a stamp of approval to any one trial judge's view on this very difficult issue." 806 So.2d at 1268. The appellate courts of this State take this issue very seriously, and haphazard review of these cases should not occur. In fact, our own independent and complete review of the record leads us to the conclusion that the trial court's conclusions are correct and are supported by the record.[5]
Nevertheless, the trial court clearly has the advantage, as the fact-finder, of seeing the minor while she testifies. This is precisely why its decision should be accorded deference. "A determination of maturity necessarily involves more trial court discretion." In re Doe, 19 S.W.3d 249, 257 (Tex.2000). The record on appeal does not indicate that the trial court in this case was plainly or palpably wrong in its determinations. For these reasons, we deny the petition.
PETITION DENIED.
SEE, LYONS, BROWN, and STUART, JJ., concur.
HOUSTON and HARWOOD, JJ., concur in the result.
JOHNSTONE and WOODALL, JJ., dissent.
JOHNSTONE, Justice (dissenting).
I respectfully dissent. The trial judge has defied the statute, which requires only that the minor prove either that "the petitioner is sufficiently mature and well enough informed to make the abortion decision on her own" or that "performance of the abortion would be in the best interest of the minor." § 26-21-4(f)(1) and (2), Ala. Code 1975.
The uncontradicted evidence in the record proves the facts summarized in the minor's petition for review:
"[The minor] is sufficiently mature and well-enough informed to make the abortion decision without the consent of her parents. [The minor] is 16 years old and, at the time of the trial court's hearing, was 10 ½ weeks pregnant. [The minor] will be a senior in high school beginning in August 2001. Last year, [she] maintained a 4.16 GPA. [The minor] is a member of several academic honor clubs and is participating in [a program for outstanding students] this summer. [She] has two jobs, one for which she is a volunteer [sports] instructor, the other for which she is a babysitter. [The minor] saves her earnings in a bank account and will use some for [a] trip. [She] plans to graduate high school and attend a selective university
. . . .
"[The minor] took [a] home pregnancy test and then went for pregnancy testing at The Pregnancy Test Center. She spoke with a counselor at The Pregnancy Test Center, a pro-life organization. [The minor] sought the advice concerning the abortion procedure and its effects on the body from her own pediatrician of 16 years. [She] attempted to speak with physicians at three different abortion clinics, but through no fault of her own was not allowed. [The minor] testified that she had considered alternatives *1280 to abortion such as raising her child and putting her child up for adoption, but ruled those out as options for herself.
"[The minor] testified about how an abortion would be performed. She stated that she knows there are risks, both physically and emotionally, of abortion and is willing to accept the risks. [She] testified she would probably be accompanied to the proceeding by her older sister, who would stay with her after the procedure. [The minor] stated she would seek medical help if complications arise as a result of the procedure. After weighing her alternatives and considering the risks, [the minor] testified that she still chooses to pursue an abortion.
". . . .
"[The minor] testified that her parents are opposed to abortion. If the parental consent waiver is ultimately denied, [the minor] plans to have and raise a child. [She] stated that she is not emotionally or financially ready to raise a child. Further, she testified that she has plans for higher education and plans for a future career. [The minor] also stated that she is not prepared for the stigma of being an unwed teenage mother."
After a hearing the trial judge entered a written order. I will quote it but will number the paragraphs for reference:
"[1] The Court finds that the minor is not mature and well-enough informed to make a decision about abortion without the consent of a parent. The minor's parents, both physicians are uniquely equipped to advise her in this life crisis. The minor's testimony describes a functional family that is a viable social unit.
"[2] Neither the minor's testimony nor her carriage, demeanor or deportment satisfied this court's inquiry into her maturity. Further she lacks the seasoning and life experience necessary to make a knowing and informed decision that this life crisis dictates.
"[3] Further this court finds that it is this court's duty to protect minors from the harmful consequences of their immaturity. Twelve and one third years of experience as a trial judge guides this court to find that a mere recital of grades and activities do not equal the level of maturity and orientation the legislature intended in enacting the parental consent statute.
"[4] This minor is woefully uninformed. Her testimony included a cursory recitation of the alternatives to abortion and her quick dismissal of those alternatives. The minor had a brief conversation with her pediatrician and the pediatrician expressed concern for the minor's health. The Court finds that this is the only professional advice the minor received.
"[5] Further, this minor was denied an opportunity to discuss the abortion procedure with abortion nurses or abortion doctors. Their refusal to provide the minor with information about abortion compels this court to find that this immature minor is lacking the ability to make a fully informed choice that considers the immediate and long range consequences of abortion.
"[6] The Court finds that a criminal defendant in this country is afforded (under the Miranda decision) greater protection than this minor would have under these circumstances if this waiver were granted.
"[7] Therefore it is the finding of this court that the minor is not mature *1281 and well enough informed to intelligently decide to have an abortion without parental consent and that under the proposed circumstances and conditions abortion is not in the best interests of the minor."
The findings of the trial judge in paragraph 1 of her order about the merits of the minor's parents and her family unit implicitly add elements for proof by the minor not contained in the statute. The express purpose of § 26-21-4, Ala.Code 1975, is to allow the minor to bypass her parents, regardless of their merits. The statute does not require the minor to prove any facts adverse to the parents in order to bypass them. Likewise, the statute does not require the minor to disprove her parents' merits. The trial judge's addition of these elements of proof is judicial legislation, which violates Art. III, § 43 of the Alabama Constitution of 1901.
The trial judge's finding in paragraph 2 of her order that the minor "lacks the seasoning and life experience necessary to make a knowing and informed decision" defies the very purpose of § 26-21-4, which is to allow minors, who by definition lack seasoning and life experience, to obtain the waiver of the requirement of parental consent. The finding of the trial judge in paragraph 3 that "it is this court's duty to protect minors from the harmful consequences of their immaturity" is immaterial to this case. The only harmful consequence of this minor's immaturity supported by the record is her pregnancy itself, which is the very condition § 26-21-4 is intended to ameliorate.
The trial judge's finding in paragraph 4 that "[t]his minor is woefully uninformed," defies the record. This minor is informed on every topic the Alabama appellate courts have found material. Allowing a trial judge to require even more knowledge allows the trial judge arbitrarily to deny every petition inasmuch as every person, no matter how learned, can always know more.
In paragraph 5 of her order, the trial judge illegally adds to the statute the requirement that the minor prove that she has discussed the abortion procedure with abortion nurses or doctors. This addition is another violation of Art. III, § 43 of the Alabama Constitution of 1901.
In paragraph 6 of her order, the trial judge confuses this minor's petition for her own relief with a criminal prosecution against the minor. In this paragraph, the trial judge finds that granting the relief would deprive the minor of her Miranda rights. Which ones? Her right to counsel? Her right not to testify against herself? Her right to stop testifying and to demand counsel at anytime? In truth, this "finding" is absurd rhetoric which reveals a bias against the relief sought by the petition. This same trial judge has exhibited this same bias in at least one other case. See my dissent in Ex parte Anonymous, 803 So.2d 542 (Ala.2001). and the dissent of Presiding Judge Yates in In the Matter of Anonymous, 803 So.2d 529 (Ala. Civ.App.2001).
Even the ore tenus rule applied by this Court and the Court of Civil Appeals does not save the trial judge's decision in this case. It is plainly erroneous and manifestly unjust. The ore tenus rule itself requires reversal of such a decision. Noland Co. v. Southern Dev. Co., 445 So.2d 266, 268 (Ala.1984). Moreover, the ore tenus rule is improperly applied in this case. See my dissent in Ex parte Anonymous, supra, 803 So.2d at 560 (Ala.2001). The de novo standard of review should apply. Id. Judged de novo, this minor's evidence is as *1282 compelling as the evidence in all of our precedents for reversing a trial judge's denial of relief.
"Constitutional rights do not mature and come into being magically only when one attains the state-defined age of majority. Minors, as well as adults, are protected by the Constitution and possess constitutional rights." Planned Parenthood of Central Missouri v. Danforth, 428 U.S. 52, 74, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976). "Any independent interest the parent may have in the termination of the minor daughter's pregnancy is no more weighty than the right of privacy of the competent minor mature enough to have become pregnant." Danforth, 428 U.S. at 75, 96 S.Ct. 2831. "The abortion decision differs in important ways from other decisions that may be made during minority. The need to preserve the constitutional right and the unique nature of the abortion decision, especially when made by a minor, require a State to act with particular sensitivity when it legislates to foster parental involvement in this matter." Bellotti v. Baird, 443 U.S. 622, 642, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979).
"[T]he potentially severe detriment facing a pregnant woman ... is not mitigated by her minority. Indeed, considering her probable education, employment skills, financial resources, and emotional maturity, unwanted motherhood may be exceptionally burdensome for a minor. In addition, the fact of having a child brings with it adult legal responsibility, for parenthood, like attainment of the age of majority, is one of the traditional criteria for the termination of the legal disabilities of minority. In sum, there are few situations in which denying a minor the right to make an important decision will have consequences so grave and indelible."
Bellotti, 443 U.S. at 642, 99 S.Ct. 3035 (citation omitted).
The statute itself is disingenuous. It merely feigns concern for the minor with the obvious purpose of impeding abortions in general. This subterfuge is apparent from the statutory absurdity that the more immature and uninformed a girl is, the more she may be relegated to bearing a baby. § 26-21-4(f)(1), Ala.Code 1975. Even the statute, however, does not license the courts to strain out a gnat and swallow a camel. The courts should not preoccupy themselves with the speculative, make-weight possibility that an abortion might harm the minor and ignore the certainty that the denial of an abortion will harm the minor grievously and permanently.
NOTES
[1] The petitioner has not challenged the trial court's denial of that motion.
[2] The minor testified that her relationship with her mother was "pretty good" and she indicated, "We can normally talk about whatever is on my mind or whatever is on her mind." She stated that her relationship with her father is "the same although it's a little bit moresort of like the feelings are intense sort of likethere's usually more fear, if that makes sense." The minor's use of the word "fear" seems to indicate her apprehension regarding her father's approval or disapproval. At no time did the minor suggest that her relationship with her father was bad or even strained.
[3] She could not say with certainty, however, that this was the procedure that would be used in her case.
[4] Some may argue that Swindall is distinguishable from the present case because the trial court in Swindall refused to allow testimony contradicting the "undisputed" testimony. There can be no significant difference because here, like Swindall, the trial court is prohibitedby statutefrom allowing other interested parties to offer contradictory testimony.
[5] We can find nothing in the record to support Judge Yates's assertion. To the contrary, since Ex parte Anonymous was decided, the Court of Civil Appeals has remanded at least one of the handful of waiver of parental-consent cases it has reviewed to the trial court for the entry of specific findings for use in its review.